721 So.2d 885 (1998)
Richard L. BROWN
v.
TEXAS-LA CARTAGE, INC.
No. 98-C-1063.
Supreme Court of Louisiana.
December 1, 1998.
Rehearing Denied January 15, 1999.
George Arthur Flourney, Fuhrer, Flournoy, Hunter & Morton, Alexandria, for Applicant.
Dee Dodson Drell, Gold, Weems, Bruser, Sues & Rundell, Alexandria, for Respondent.
*886 KIMBALL, Justice.[*]
We granted plaintiff's writ to consider the proper standard to be applied in determining whether a workers' compensation claimant is entitled to penalties and attorney fees pursuant to La. R.S. 23:1201. After examining the unambiguous language of the statute, we note the arbitrary and capricious standard no longer applies to actions brought under this statute and hold that statutory penalties and attorney fees shall be awarded if the employer or insurer fails to timely pay benefits due claimant pursuant to La. R.S. 23:1201 unless: (1) the claim is reasonably controverted or (2) such nonpayment results from conditions over which the employer or insurer had no control. Furthermore, we hold plaintiff is entitled to an award of penalties and attorney fees for defendants' failure to timely and adequately compensate him since his claim was not reasonably controverted and the nonpayment did not result from conditions over which the employer or insurer had no control.

Facts and Procedural History
Plaintiff, Richard Brown, was injured in the course and scope of his employment for the defendant, Texas-LA Cartage, Inc., on May 21, 1996. Brown, however, continued to work until his physician found him temporarily unable to work on July 9, 1996. Following this restriction from work, defendant began paying workers' compensation benefits.
Compensation for Brown's first week of injury was suspended pursuant to La. R.S. 23:1224.[1] On July 24, 1996, defendant issued a check in the amount of $239.62 covering benefits from July 16 to July 20. This first check was a partial payment because defendant's workers' compensation insurer pays from Sunday through Saturday of each week and issues checks only on Wednesday for the prior pay period. After this partial pay period, Brown was paid at a weekly rate of $299.53. The claims adjuster testified that to calculate this weekly rate, she called Texas-LA Cartage and requested Brown's gross wages for the four weeks prior to his injury. She further testified that the payroll information she was given revealed that Brown's average weekly wage for those four weeks was $449.30 which allowed her to conclude Brown was entitled to temporary total disability benefits at a rate of $299.53.
After receiving benefits for several weeks, Brown contacted an attorney who then advised the claims adjuster by letter dated August 30, 1996, that Brown was a full-time employee and therefore entitled to increased benefits. The claims adjuster contacted Texas-LA Cartage and was told that although Brown worked less than forty hours a week in the four weeks preceding his injury due to a business slow down, he was hired as a full-time employee. The claims adjuster then recalculated the rate and increased Brown's benefits to $322.68 per week. On September 10, 1996, Brown was issued a check for the difference in the pay rate for the weeks previously paid. On that same date, Brown was also issued a check for the first week following injury which had been withheld pursuant to La. R.S. 23:1224.
On September 12, 1996, Brown filed a Disputed Claim for Compensation, Form LDOL-WC-1008, with the Office of Workers' Compensation, alleging that he was injured during the course and scope of his employment and seeking, inter alia, penalties and attorney fees for the allegedly late and inadequate benefits.
Subsequent to a hearing on the merits, the hearing officer dismissed Brown's claims, reasoning that there was no negligence present in the handling of Brown's claim and that the matter was reasonably controverted. Specifically, the court stated:
This Court is going to rule in favor of the Defense. In finding for the Defendant I think a reoccurring thing that goes throughout the evidence that was presented *887 and what I heard today is an attitude of indifference, and I do think that the insurance company did notor they were not neglectful in their handling of this claim. In fact there were some things or some actions between the employer and I guess the TPA that I would almost commend or, you know, salute the employer for doing in the handling of this case. You know, so I'm going to stateI'm going to hold to that and I'll cite Stegall[2] as case law in upholding my decision.... I think that the employer, or the insurance company, when they learned that there was a possible discrepancy in the amount that they needed to pay in this matter wasor that matter was reasonably controverted.
The court of appeal, with one judge dissenting, affirmed the decision of the Office of Workers' Compensation, reasoning that the hearing officer was not clearly wrong in denying penalties and attorney fees in this case as defendant acted responsibly in administering Brown's claim and was willing to appropriately compensate him. The court reviewed the testimony of the claims adjuster and noted that she had no indication of Brown's status as a full-time employee who might, or might not, work forty hours a week. Furthermore, her testimony confirmed that although Brown's status was unclear, a check was issued for the increased amount when the discrepancy was discovered. The third circuit declined to penalize defendant since it had paid the increased benefits despite the alleged "gray area" surrounding Brown's work status.
Regarding Brown's contention that the first check issued compensated him for less than a full week's benefits, the appellate court found the insurer was acting pursuant to its established policy of issuing checks only on Wednesday for the prior week ending on Saturday. The court held the claimant was adequately paid and defendant sought to systematically meet the compensation requirements; therefore, the hearing officer was not clearly wrong in denying penalties in this respect.
Turning to the payment of benefits for Brown's first week following disability, the third circuit found the hearing officer was not clearly wrong in denying penalties and attorney fees given the wording of La. R.S. 23:1224. The claims adjuster testified that the benefits for the first week were due on August 20 and the company then had a fourteen-day period in which to pay them. The benefits were paid on September 10 because, according to the adjuster, checks were issued only on Wednesdays and she was out of the office on the Wednesday prior to September 10. After considering this testimony, the appellate court concluded defendant acted responsibly in administering Brown's claims.
Brown asked this court to review the case, arguing the lower courts erred in not awarding penalties and attorney fees because: (1) the first installment of compensation due on the fourteenth day after notice of disability was paid late, was a partial payment, and was paid at an improper weekly rate; and (2) the withheld first week of disability payments due after six weeks of continued disability was not paid until 21 days after the expiration of six weeks of continuous disability. We granted Brown's writ to determine whether the lower courts applied the correct standard in denying penalties and attorney fees and to consider the correctness of that decision. Brown v. Texas-La Cartage, Inc., 98-1063 (La.6/19/98), 720 So.2d 1207.

Legal Background
In considering whether Brown is entitled to penalties and attorney fees, it is initially helpful to consider the statutory progression of such awards. Prior to the insertion of provisions for penalties and attorney fees into La. R.S. 23:1201, penalties and attorney fees were awarded to injured *888 employees under La. R.S. 22:658 when insurers failed to timely pay claims. Louisiana R.S. 22:658, as it appeared in the Revised Statutes of 1950, provided that all insurers issuing any type of contract other than policies for life, health and accidents, "shall" pay the amount of any claim within a specified time period or be subject to a penalty and reasonable attorney fees if the failure to pay was found to be arbitrary, capricious or without probable cause. In Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (La.1952), this court held La. R.S. 22:658 was applicable to workers' compensation policies. In Acts No. 432 of 1958, the legislature enacted La. R.S. 23:1201.2 which provided for essentially the same penalties and attorney fees against employers. It was under these provisions that Louisiana courts were required by statute to analyze the employer's/insurer's actions under the "arbitrary, capricious or without probable cause" standard. See, e.g., Patton v. Silvey Companies, 395 So.2d 722 (La.1981); Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Guillory v. Travelers Ins. Co., 294 So.2d 215 (La.1974).
In 1983, Act No. 1 of the 1st Ex.Sess. placed provisions for penalties and attorney fees entirely within the Workers' Compensation Act and applied those provisions to both insurers and employers. Specifically, the Act reenacted La. R.S. 23:1201 to provide, inter alia, that the first installment of compensation payable for temporary total disability shall become due on the fourteenth day after the employer has knowledge of the injury on which date all such compensation then due shall be paid. If any installment of such compensation was not paid within the specified time period, a penalty, equal to twelve percent of the unpaid installment, was imposed, "unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply." Regarding attorney fees, Acts 1983, 1st Ex.Sess., No. 1, La. R.S. 23:1201.2, which had previously provided for penalties and attorney fees when a non-insured employer failed to timely pay any claim due or discontinued payments when the failure or discontinuance was found to be arbitrary, capricious or without probable cause, was amended to, inter alia, delete all references to penalties, but still provide for attorney fees, and to apply to insurers and non-insured employers alike.
Subsequent to the sweeping changes made in 1983, few changes have been made to those portions of La. R.S. 23:1201 at issue in the instant case. Most significantly, Act No. 926 of 1985 included the insurer's knowledge of the injury or death in the requirement that the first installment of compensation payable for temporary total disability shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, and Act No. 1137 of 1995 included a provision for reasonable attorney fees as well as penalties in La. R.S. 23:1201(E). Act No. 1137 of 1995 changed § 1201 into its present form which reads in pertinent part:
§ 1201. Time and place of payment; failure to pay timely; failure to authorize; penalties and attorney fees
B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.
* * * * * *
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:

*889 (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

* * * * * *
Concomitantly, Act No. 1137 of 1995 amended La. R.S. 23:1201.2, which had mandated an award of attorney fees against insurers and non-insured employers who failed to pay claims within sixty days after receipt of written notice when such failure was found to be arbitrary, capricious or without probable cause, to apply only when an employer or insurer discontinues payment of claims and such discontinuance is found to be arbitrary, capricious or without probable cause. As such, La. R.S. 23:1201.2 now reads:
§ 1201.2. Discontinuance of payment; attorney fees
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.[3]

Discussion
Where a new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law. New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223, p. 12 (La.4/10/95), 653 So.2d 538, 544. Thus, as can be seen from the foregoing discussion and the unambiguous language of La. R.S. 23:1201, the question of whether defendant's actions were arbitrary and capricious is no longer applicable when considering penalties and attorney fees for a defendant's failure to pay benefits timely. The legislature made this clear as to penalties in 1983 when it placed the penalty provision within the Workers' Compensation Act and, instead of using the previous phrase "arbitrary, capricious or without probable cause," set forth the current standard of assessing penalties for untimely payment unless the employee's rights to benefits were reasonably controverted by the employer or his insurer or the nonpayment resulted from conditions over which the employer or insurer had no control. Similarly, this change in standards was effected with respect to attorney fees awardable for untimely payment of benefits in 1995 when the legislature added a provision for such fees to La. R.S. 23:1201, which had previously dealt only with penalties, and made La. R.S. 23:1201.2, which retains the arbitrary and capricious standard, *890 applicable only to situations where payments were discontinued. See H. ALSTON JOHNSON III, 14 LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE § 389 (3d ed.1994).
The unambiguous language of La. R.S. 23:1201 clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control.[4] Unreasonably controverting a claim, which is the exception at issue in this case, requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. BLACK'S LAW DICTIONARY 104, 211 (6th ed.1990). Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 110, 333 (1966).
The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed. See Antrainer v. Great Atlantic & Pacific Tea Co., 97-1554, p. 6 (La.App. 1 Cir. 4/8/98), 712 So.2d 590, 594 ("Given the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee."); Woods v. Ryan Chevrolet, Inc., 30,206, p. 9 (La.App. 2 Cir. 2/25/98), 709 So.2d 251, 257 ("The employee's right to such benefits will be deemed `reasonably controverted' if the employer or insurer had a reasonable basis for believing that medical expenses and indemnity benefits were not due the employee.... Reasonably controverting a claim means that the payor has factual or medical information of such a nature that it reasonably counters that provided by the claimant."); Cook v. Kaldi's Coffee House, 97-0979, p. 10 (La.App. 4 Cir. 1/28/98), 706 So.2d 1052, 1058 ("The test to determine whether the claimant's right has been reasonably controverted turns on whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant."); Lemoine v. Hessmer Nursing Home, 94-836, p. 20 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 456 ("A workers' compensation claim is `reasonably controverted,' precluding imposition of penalties and attorney fees, if the employer had sufficient factual and medical information upon which to base a decision to reduce or terminate benefits."). If an employer or insurer reasonably controverts *891 a claim and then becomes aware of information that makes his controversion of that claim unreasonable, he must then pay the benefits owed or be subject to penalties and attorney fees from that point forward.

Analysis
Given the correct interpretation of that portion of La. R.S. 23:1201 at issue in this case, we now turn to the application of this statute to the facts at hand. Claimant alleges he is owed penalties and attorney fees under La. R.S. 23:1201(F) because the first installment of his benefits was late, partial in that it was not a remittance of "all such compensation then due" and in the incorrect amount and because the first week of benefits, withheld pursuant to La. R.S. 23:1224, was not timely paid.[5] We agree.
The record is unclear as to when Brown's employer received notice of his temporary total disability. Brown received an off-work slip from his doctor on July 9 and his employer faxed the slip to the insurer on July 10. There is no evidence, however, to show whether his employer received the slip on the ninth or the tenth.[6] If his employer received it on the ninth, then the first installment was due on July 23 rather than on July 24, the date his check was issued by the insurer. We need not belabor this point, however, because it is clear the provisions of La. R.S. 23:1201 were violated by the insurer's partial payment of compensation benefits due. Louisiana R.S. 23:1201(B) provides that the first installment of compensation payable for temporary total disability shall become due on the fourteenth day after the employer or insurer has knowledge of the injury, on which date all such compensation then due shall be paid. The first week of benefits, those for July 9 through July 15, was validly withheld pursuant to La. R.S.23:1224. Thus, on July 24, all compensation then due should have been remitted to Brown. On July 24, however, the insurer issued a check for the period of July 16 through July 20 because of its internal policy of only issuing checks on Wednesday and then for the previous period ending on Saturday. As such, the clear mandate of La. R.S. 23:1201(B) was violated, thereby triggering an award of penalties under La. R.S. 23:1201(F) unless one of the two exceptions applied. Furthermore, even that partial payment was paid in an incorrect amount, as Brown's average weekly wage was incorrectly calculated under La. R.S. 23:1021(10)(a)(iii) instead of under La. R.S. 23:1021(10)(a)(i). Finally, the first week of withheld benefits, due "after the first six weeks have elapsed" pursuant to La. R.S. 23:1224, was not paid until September 10 even though the six week period ended on August 20.
As discussed above, penalties should be assessed against defendants unless the employer or insurer reasonably controverted Brown's right to the benefits or the violations resulted from conditions over which the employer or insurer had no control. Defendants do not claim, nor do the facts support the argument that the benefits were not timely paid for reasons beyond the employer's or insurer's control. Therefore, we must determine whether the employee's right to the timely and accurate payment of benefits was reasonably controverted by the employer or the insurer. We find that it was not.
Brown was not paid all that he was due on July 24 because of the insurer's internal policy of only issuing checks on Wednesday.[7] *892 Although we recognize the value of an existing payment policy to ensure the timely and accurate issuance of compensation benefits, such a policy cannot contravene statutory requirements as defendant's has done. The existence of defendant's policy of issuing checks only on Wednesday cannot reasonably controvert the fact that all sums then due were owed because the policy does not present factual evidence to counter plaintiff's claim for benefits owed. Similarly, Brown was not paid all compensation he was due until September 10 because, prior to that time, his average weekly wage was miscalculated. According to all the testimony presented, by both plaintiff and defendants, Brown was a full-time employee who was working less than forty hours a week due to a slow down in his employer's business. Notwithstanding the fact he was working less than forty hours a week, he was a full-time employee and his average weekly wage should have been calculated using the formula provided in La. R.S. 23:1021(10)(a)(i). The fact of his full-time status was not controverted by defendants by any evidence other than the claims adjuster's assertions that this was a "gray area" of the law. In fact, Mr. Earl Templeton, owner of Texas-LA Cartage, Inc., testified that Brown was considered a full-time employee even though he did not always work forty hours a week.[8] Similarly, the claims adjuster testified she had knowledge of Brown's full-time status when she calculated the rate for his temporary total disability benefits.[9] When it was brought to her attention that Brown claimed he was due an increase in benefits because he was a full-time employee, the claims adjuster called the employer to confirm this fact and, when it was so confirmed, increased Brown's benefits and issued a check to make up the difference between what he was paid and what he should have been paid for the prior weeks. The insurer's vague allegations that this was a "gray area of the law" cannot serve to reasonably controvert the fact of plaintiff's full-time employment already agreed upon by Brown and Texas-LA Cartage, Inc. Finally, defendants argue the due date of payments for the first week of withheld wages was reasonably controverted because La. R.S. 23:1224, which states such benefits are due "after the first six weeks have elapsed," is ambiguous in that it is not clear whether the benefits are due the day after six weeks have elapsed or within a reasonable time after which such period has elapsed. We need not resolve this dispute at this time, however, because defendants' delay of three weeks following the expiration of the six week period was unreasonable. *893 Hence, an unreasonable action cannot amount to a reasonable controversion. For all of these reasons, we conclude plaintiff is entitled to an award of penalties and attorney fees and we remand the case to the trial court for the taking of evidence on this issue.
We are cognizant of the fact that defendants did not act in an egregious manner in this case. However, the purpose of an imposition of penalties is to "nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its obligation." Weber v. State, 93-0062, p. 8 (La.4/11/94), 635 So.2d 188, 193. An imposition of penalties in this case furthers such a policy by ensuring that employers and insurers are in compliance with the statutory scheme that requires timely payments unless the employer or insurer has a valid reason or evidence upon which to base a denial of benefits.

Conclusion
We find the hearing officer's failure to award penalties and attorney fees for defendants' failure to timely and adequately compensate plaintiff was manifestly erroneous. We therefore reverse the hearing officer and court of appeal as to these issues and remand the matter to the hearing officer for computation of penalties to be awarded and an assessment of attorney fees consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
NOTES
[*] CALOGERO, C.J., not on panel. See Rule IV, Part 2, Section 3.
[1] La. R.S. 23:1224 provides:

§ 1224. Payments not recoverable for first week; exceptions
No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for six weeks or longer after date of the accident, compensation for the first week shall be paid after the first six weeks have elapsed.
[2] Stegall v. J & J Exterminating, 94-1279 (La. App. 3 Cir. 3/1/95), 651 So.2d 400. In Stegall, the third circuit affirmed an award of penalties and attorney fees pursuant to La. R.S. 23:1201(E) and 23:1201.2, stating:

Generally, an insurer will not be penalized for a simple miscalculation of benefits; however, penalties and attorney's fees have been imposed where the insurer gathers incomplete data in preparing the claim or makes no attempt to correct an error that was pointed out to it. An insurer may not proceed with an attitude of indifference to the injured workers' situation.
Id. at p. 6, 651 So.2d at 403 (citations omitted).
[3] La. R.S. 22:658(C), which is not applicable to the instant case, reads:

C. (1) All claims brought by insureds, worker's compensation claimants, or third parties against an insurer shall be paid by check or draft of the insurer to the order of the claimant to whom payment of the claim is due pursuant to the policy provisions, or his attorney, or upon direction of such claimant to one specified; provided, however, that the check or draft shall be paid jointly until the amount of the advanced claims payment has been recovered by the employer.
(2) No insurer shall intentionally or unreasonably delay, for more than three calendar days, exclusive of Saturdays, Sundays, and legal holidays, after presentation for collection, the processing of any properly executed and endorsed check or draft issued in settlement of an insurance claim.
(3) Any insurer violating this Subsection shall pay the insured or claimant a penalty of two hundred dollars or fifteen percent of the face amount of the check or draft, whichever is greater.
Those other portions of La. R.S. 22:658, discussed supra, which impose penalties and attorney fees when certain insurers fail, arbitrarily, capriciously or without probable cause, to timely pay the amount of any claim due, now specifically except from their coverage workers' compensation insurers.
[4] Such an interpretation is not new as this standard has been applied in our previous cases such as Seal v. Gaylord Container Corp., 97-0688, p. 12 (La.12/2/97), 704 So.2d 1161, 1168 ("LSA-R.S.23:1201(F) provides the basis for an award of attorney fees and penalties.... This provision, however, is inapplicable if the claim is reasonably controverted."); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 18 (La.7/1/97), 696 So.2d 551, 561 ("Under former subsection (E) of LSA-RS 23:1201, a claimant is entitled to recover additional penalties from the employer for any compensation that is payable without an order, but which the employer has failed to pay.... However, these penalties are not available if the employer reasonably controverts the claimant's right to such compensation."); Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993) ("The employer or insurer is liable for statutory penalties for withholding benefits without evidence to `reasonably controvert' the employees [sic] right to compensation and medical benefits.").
[5] Plaintiff does not allege a discontinuance of benefits, therefore an award of attorney fees pursuant to La. R.S. 23:1201.2 is not warranted in this case. Rather, an award of attorney fees will be determined under the standards set forth in La. R.S. 23:1201.
[6] Plaintiff testified as follows:

Q: Was Doctor Patton the doctor who took you off work July the 9th?
A: Yes, he was.
Q: Did you at that time get an off-work slip from him that you gave your employer?
A. Yes, sir, I did.
This testimony is ambiguous as it could be read to mean either that Brown got the off-work slip on the 9th and gave it to his employer that same day or that Brown got the off-work slip on the 9 th and gave it to his employer some time later.
[7] The following exchange between the claims adjuster for the insurer and plaintiff's attorney concerning this policy took place at the hearing on this matter:

Q: And is there some statutory authority that you are aware of that permits you to pay less than a week's compensation that's due?
A: The only thing we go by that tells us we have to pay it within fourteen days of the time it was due the first payment that was due on this was the 16 th of July. Our payroll is done on a weekly basis and it's issued every Wednesday, we don't issue checks on Monday, Tuesday, Wednesday [sic], Thursday and Friday, we issue them once a week, and they're issued on Wednesday for the week prior so that they're actually issued through Saturday and it's issued on the following Wednesday. So this one was issued at less than a total week because it was issued on a Wednesday and it was issued for the week prior to that for the 16 th through the 20 th.
[8] The testimony on this issue included the following exchange between Mr. Templeton and defendant's attorney:

Q: But you claimyou had him classified simply as a full-time employee?
A: He was a full-time employee during this entire period of time, he was never taken off the full-time status
Q: All right.
A. even though there may have been weeks that he did not work a full forty hours.
[9] On cross examination, the claims adjuster testified as follows:

Q: Did you at any time ask anyone with Texas-Louisiana Cartage if they had in his personnel file any written evidence that he had agreed to and that with his employer to be employed as less than a full-time employee?
A: They show that he was a full-time employee, he was considered a full-time employee, he worked consistently for them.
Q: So you always had that knowledge
A: Yes.
Q: when you set the TTD rate?
A: That he was a full-time employee, but
Q: And you
A: full-time employment doesn't necessarily always mean forty hours a week She further testified on cross examination:
Q: Yet from the very beginning you were aware that Mr. Brown was considered a fulltime employee by his employer and you were aware that his hourly rate was twelve dollars and ten cents per hour?
A: We were aware that he was full time, yes.