876 So.2d 157 (2004)
Hector SARRIO
v.
STALLING CONSTRUCTION COMPANY.
No. 04-CA-34.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*159 Jeremiah A. Sprague, Timothy J. Falcon, Falcon Law Firm, Marrero, LA, for Appellee.
Wade A. Langlois, III, Gaudry, Ranson, Higgins & Gremillion, L.L.C., Gretna, LA, for Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
In this workers compensation case, the Defendant, Stalling Construction Company, appeals from a judgment in favor of the Plaintiff, Hector Sarrio. The Plaintiff cross-appealed for damages for frivolous appeal. We amend in part, affirm as amended and remand.
The Plaintiff was hired by the Defendant as a wall framer and dry-wall hanger in August of 2001. On May 27, 2002, he allegedly suffered a work related accident when a saw that he was using to cut door frames "kicked back," causing him to fall and injure his lumbar spine. No one witnessed the accident, but a co-worker, Gary Walker (Walker), discovered him sitting on the floor, holding his back, shortly after the alleged accident. His supervisor, Von Heausler (Heausler), was informed and the *160 Plaintiff was transported by ambulance to Tulane University Hospital and Clinic where he was diagnosed with a lumbar contusion. He was subsequently treated for continuing back problems. He did not return to work and was not paid any workers' compensation benefits until shortly before trial. The Plaintiff had pre-existing back problems.
On June 17, 2002, the Plaintiff filed a Disputed Claim for Compensation. The case was tried on July 23, 2003. The workers' compensation judge rendered a judgment on September 12, 2003, finding that the Plaintiff had been injured in a work related accident on May 27, 2002 and that the accident aggravated a pre-existing back condition. The workers' compensation judge found that the Plaintiff is entitled to temporary total disability (TTD) benefits from date of the accident, and all medical, medication, and transportation expenses related to the accident. She further found that the Defendant was arbitrary and capricious in failing to pay compensation benefits and awarded the Plaintiff penalties of $2,000 for its failure to pay indemnity benefits, $2,000 for failure to pay medical benefits and $5,000 for attorney's fees.
On appeal, the Defendant contends that the workers' compensation judge erred in finding that the Plaintiff's disability was caused by the alleged work accident, in finding that the Plaintiff is temporarily, totally disabled, and in awarding penalties and attorney's fees. The Plaintiff appealed asking for damages for frivolous appeal.
The appellate court's review of a workers' compensation case is governed by the manifest error or clearly wrong standard. Wiley v. Dijon Services, Inc., 02-242, p. 3 (La.App. 5th Cir.10/16/02), 831 So.2d 317, 319, writ den., 02-2612 (La.12/13/02), 831 So.2d 990. To be entitled to workers' compensation benefits, the plaintiff must prove that there was a work related accident, resulting in a disability that was caused by the accident. Wiley, 02-242 at p. 3, 831 So.2d at 318. The plaintiff bears the burden of establishing this causal connection by a reasonable preponderance of the evidence. Id.; Quinones v. U.S. Fidelity and Guar. Co., 93-1648, p. 6 (La.1/14/94), 630 So.2d 1303, 1306-07.

WORK RELATED INJURY
The Defendant contends that the Plaintiff failed to prove a causal link between the alleged work accident and his disability, because he had a pre-existing disability with restrictions and the medical evidence shows that there was no increase in the pre-existing disability.
The evidence shows that the Plaintiff was hired by the Defendant in August of 2001 and continued until May 25, 2002. On that date, he was hanging sheetrock at the Hilton Hotel during a renovation project. According to the Plaintiff, he was in the room alone cutting a door frame when the saw which he was using "kicked back" causing him to strike a bathtub edge resulting in back pain. Shortly after the incident, another worker, Walker, came in and saw him on the floor holding his back. Walker reported the incident to the supervisor, Heausler, who sent the Plaintiff to the emergency room. Because his car was at the work site and the Defendant did not provide for his return there, the Plaintiff walked back to the Hilton, some distance from the hospital.
Walker testified that he did not talk to the Plaintiff after he reported to Heausler that he found the Plaintiff laying on the floor. Heausler testified that he did not see any evidence in the room of a fall, such as a disturbance in the metal shavings on the floor, but noted that the Plaintiff was a good worker who came to work every day, *161 never complained and created no problems. The trial judge found that the Plaintiff had proved a work related injury. After our review, we find no manifest error in this regard.

TEMPORARY, TOTAL DISABILITY
Prior to working for the Defendant, the Plaintiff had been employed as a carpenter performing similar duties with other companies. He admitted that he injured his back in 1997 and magnetic resonance imaging (MRI) tests taken in 1997 and 1998 indicate mild bulging discs at L4-5 and L5-S-1, and narrowing of the neural foramina attributed to degenerative changes. However, the Plaintiff continued to perform his hard labor work with the help of medications from 1997 until this accident in 2001. Eight of those months he worked for the Defendant without any problems. For six months prior to starting to work with the Defendant, he was unemployed due to lay offs, not his medical condition. After this incident, the Plaintiff was examined in the Tulane Medical Center emergency room and diagnosed with a lumbar contusion. The Plaintiff next saw Dr. William Woessner, a family and occupational medicine specialist, on May 29, 2002. He diagnosed lumbar and coccygeal contusion and recommended that the Plaintiff see an orthopedic doctor as soon as possible. Dr. Woessner released the Plaintiff to light duty work. The Plaintiff returned to Dr. Woessner on June 10, 2002, still complaining of low back pain. Dr. Woessner found the complaints inconsistent with the examination findings and released him to regular duty. Nevertheless, he told the Plaintiff to see an orthopedic specialist.
Dr. Jose Figueroa, a general medicine practitioner, saw the Plaintiff prior to and after this incident. Dr. Figueroa had treated the Plaintiff in 2000 for an unrelated condition. In February of 2001, he diagnosed the Plaintiff with lumbar disc disease. In October of 2001, he recommended that the Plaintiff see an orthopedic specialist or neurosurgeon. The Plaintiff did not seek further treatment from anyone until this incident.
Dr. Figueroa testified that he examined the Plaintiff on June 2, 2002, six days after this accident. The doctor stated that the difference between the Plaintiff's symptoms and his symptoms prior to the accident was that the Plaintiff's pain level was higher than before. He noted muscle spasms on both sides of the Plaintiff's back. He diagnosed a low thoracic lumbar contusion. Dr. Figueroa saw the Plaintiff again on June 22, 2002 and August 3, 2002. In August, he advised the Plaintiff to see the company doctor. Based on the Plaintiff's symptoms, he would have placed the Plaintiff on light duty work, restricting him to time limits on standing and sitting, no bending and no lifting more than 20 pounds.
Dr. Deepak Awasthi, a neurosurgeon, examined the Plaintiff on October 24, 2002. He testified that the Plaintiff complained of severe pain, spasms and radiating pain into the left lower extremities. No numbness, tingling or weakness was noted, but the Plaintiff reported that his pain was becoming worse and more constant. The Plaintiff informed the doctor that he had physical therapy in the past, but not recently, and that he was not on medication. The Plaintiff also told the doctor that he had not fully recovered from his prior back injury when this happened.
Dr. Awasthi testified that his examination did not show any neurological focal motor or sensory deficits and the straight leg test was negative. He noted that a negative straight leg test does not mean that the Plaintiff was not experiencing back pain. At that time, he ordered the Plaintiff not to return to work and ordered *162 an MRI, which was not performed until June 25, 2003. At trial, he stated that the MRI's taken in 1997,1998, and 2003 show the Plaintiff suffers from degenerative disc changes at L4-5 and L5-S1, loss of water content in the discs and some disc protrusion at L5-S1. He noted that the spine showed narrowing of the neural foramina, which is a degenerative condition that could be causing impingement on the nerve. He also noted that the 2003 MRI shows edema and that this condition implies that there is an irritation of the nerve root. Although he stated that this could be a degenerative condition, he stated that the edema was not on the 1997 and 1998 MRIs. Dr. Awasthi's diagnosis was a combination of soft tissue injury and aggravation of the underlying degenerative changes. He recommended that the Plaintiff receive physical therapy, pain management, possibly epidural injections, and give the injury time to heal. He recommended that the Plaintiff refrain from heavy duty work, from lifting, pulling or pushing over 20 pounds, and stated that the Plaintiff should also refrain from excess bending and prolonged sitting or standing. He testified that the Plaintiff could perform light duty work and that the pain should improve or plateau within six months of conservative and appropriate management. Dr. Awasthi concluded that the Plaintiff suffered an aggravation of his previous condition from the accident.
On April 8, 2003, at the request of the Defendant, the Plaintiff was examined by Dr. Robert Applebaum, a neurosurgeon. The Plaintiff complained of low back, left leg and left arm pain. Dr. Applebaum also ordered an MRI and concluded that the Plaintiff has degenerative disc disease, which was aggravated by the accident. He testified that the aggravation should have lasted no more than three to six months. Any disability after that would be attributable to the underlying disc disease. He did not review any of the Plaintiff's prior records, but did review the MRI taken after the accident. That report indicated that the Plaintiff had root canal edema or swelling, but he disagreed with the report. Dr. Applebaum did acknowledge that edema would be consistent with an injury.
In order to receive TTD benefits, the Plaintiff must prove by clear and convincing evidence that he is unable to engage in any employment. La. R.S. 23:1221(1)(c).[1] "Clear and convincing" in the workers' compensation context is "an `intermediate' standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard." Hatcherson v. Diebold, Inc., 00-3263 at p. 4 (La.5/15/01), 784 So.2d 1284, 1288 (citing Black's Law Dictionary 227 (5th ed.1979)); Comeaux v. City of Crowley, 01-0032, p. 9 (La.7/3/01), 793 So.2d 1215, 1220; Kaiser v. Western-Southern Ins. Co., 01-1393, pp. 11-12 (La.App. 5th Cir.5/15/02), 821 So.2d 52, 58.
In this case, we find that the worker's compensation judge was not clearly wrong in finding that the Plaintiff is entitled to *163 TTD benefits at least until the date of trial. The Plaintiff was placed on light duty in May of 2002 by Dr. Woessner, who in June of 2002 released him to regular duty with the condition that he see a specialist because he did not know what was wrong with the Plaintiff. In October of 2002, Dr. Awasthi told the Plaintiff not to return to work because he was concerned about the Plaintiff's condition and needed an MRI to make an considered determination of the cause of the Plaintiff's pain. For whatever reason, the MRI was not performed until June 25, 2003. Dr. Awasthi's deposition was taken six days before trial, on July 17, 2003. Only then, after reviewing the MRI, did he release the Plaintiff to light duty work. In his April of 2003 report, Dr. Applebaum did not make any recommendation except to order an MRI. In his deposition on July 15, 2003, he only indicated that the aggravation should have resolved within three to six months.
We agree with the workers' compensation judge that the Plaintiff cannot perform his current occupation and was temporarily, totally disabled to the date of trial. But, we find that medical evidence also shows that the Plaintiff can perform light duty work, with restrictions on lifting, bending, sitting and standing. Although the Plaintiff contends that he is in pain, working in pain does not entitle a claimant to TTD benefits. Navarre v. K-Mart, 01-753, p. 5 (La.App. 5th Cir.11/27/01), 803 So.2d 206, 209. Rather, the Plaintiff's disability after the date of trial falls within the provisions for Supplemental Earnings Benefits (SEBs) in La.R.S. 23:1221(3).
The Defendant asserts that if the Plaintiff is entitled to SEBs, he failed his burden of proof in that regard. The Plaintiff responds that he cannot work with his disability. In Navarre we noted:
K-Mart acknowledges that the Claimant may come within the SEBs classification, but urges this court to make a finding on this record that the Claimant can earn minimum wage on a 40 hour-a-week job. We find no record support for such a finding.... Once the employee's burden in seeking SEBs is met, the burden shifts to the employer who, in order to defeat the claim for SEBs or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee, or was available in his or the employer's community or reasonable geographic region. K-Mart has made no such showing in this case. Thus, the case must be remanded for a continuation of the hearing to determine first, whether the Claimant is entitled to SEBs and, assuming that he is, since the trial judge originally found him temporarily totally disabled, second, the amount of the benefits to which he is entitled.
Navarre, 01-753 at pp. 6-7, 803 So.2d at 210.
Like Navarre, we find that this case must be remanded for a continuation of the hearing to determine whether the Plaintiff is entitled to SEBs and if so, the amount of benefits he is entitled to receive.

PENALTIES AND ATTORNEY'S FEES
La. R.S. 23:1201 F provides for the imposition of penalties and attorneys fees when indemnity or medical benefits due to the claimant are not paid timely. However, this does not apply if the claim is reasonably controverted, or if such nonpayment results from conditions over which the employer had no control. La.R.S. 23:1201 F(2). In order to reasonably controvert a claim, the Defendant must have some valid reason or evidence upon which to base the denial of benefits. *164 Brown v. Texas-La Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890. Barbarin v. TLC Home Health, 02-1054, p. 9 (La.App. 5th Cir.4/29/03), 845 So.2d 1199, 1206. The question is whether the Defendant "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time which they refused to pay all or part of the benefits allegedly owed." Brown, 98-1063 at p. 9, 721 So.2d at 890; Barbarin, 02-1054 at p. 9, 845 So.2d at 1206. The assessment of penalties and attorney fees by the workers' compensation judge is a factual question, which is not to be disturbed on appeal, in the absence of manifest error. Barbarin, 02-1054 at p. 9, 845 So.2d at 1206. Awards of penalties and attorney's fees in workers' compensation cases are penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. See, Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Williams v. Rush Masonry, Inc., 98-2271, p. 8 (La.6/29/99), 737 So.2d 41, 46. The fact that an employer may be subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. Sharbono, 97-0110 at p. 11, 696 So.2d at 1389. Further, penalties and fees are never assessed automatically against the losing party; Williams, 98-2271 at p. 9, 737 So.2d at 46.
The Defendant in this case was informed shortly after the accident that the Plaintiff had a pre-existing back condition. However, the report from Tulane University Hospital and Clinic and the several doctors that saw him in May, June and October of 2002, also showed that he suffered a lumbar contusion. Dr. Woessner placed him on light duty in May of 2002, but the Defendant told the Plaintiff that it had no light duty work available. Although Dr. Woessner said that the Plaintiff could return to full duty in June of 2002, he also stated that the Plaintiff needed to see a specialist. At some point, the Defendant became aware that the Plaintiff had been advised to see a specialist after his prior back injury.
On June 12, 2002, Plaintiff's counsel forwarded a letter to the Defendant requesting indemnity benefits and for payment of the medical benefits that the Plaintiff was incurring. He also asked for a neurosurgeon of the Plaintiff's choice. The Defendant did not respond. In September of 2002, another letter was sent with the same request. In October of 2002, the Plaintiff saw his choice of specialists, Dr. Awasthi, who told him not to return to work and ordered the MRI. Following the visit, the Plaintiff asked for authorization for the MRI and for payment of certain medical expenses. According to the Plaintiff, the Defendant refused. Instead, the Defendant sought a second medical opinion from Dr. Applebaum, who did not see the Plaintiff until April of 2003. Dr. Applebaum also ordered an MRI. Despite these requests, the MRI was not performed until June 25, 2003, after the original trial date had been continued and shortly before trial. Thus, the Plaintiff waited from October of 2002 to June of 2003 to have the test performed. The MRI showed swelling at the nerve root which was not present prior to the accident.
By October of 2002 it was clear that the Plaintiff's pre-existing condition had been aggravated by the accident. Yet, the Defendant failed to offer a light duty job or investigate possible alternative jobs for the Plaintiff and was dilatory in providing the MRI. Furthermore, the record also shows *165 that it was dilatory in paying an agreed upon amount of indemnity benefits in consideration for a continuance of the original trial date of May 15, 2003 and the Plaintiff's waiver of the penalties and attorney's fees claim. The Defendant had agreed to pay the Plaintiff indemnity benefits from May 15, 2003 through the new trial date, July 23, 2003, but did not do so until the Plaintiff filed a motion for contempt. The Plaintiff finally received the payment on June 20, 2003. Based on these facts, we find that the Defendant was not reasonable in refusing to pay TTD benefits and medical benefits. Thus, we find that the workers' compensation judge was not manifestly erroneous in awarding or the amounts of penalties and attorney's fees.

FRIVOLOUS APPEAL
The Plaintiff cross-appealed requesting damages for frivolous appeal. Based on the facts herein, we find no reason to award such damages.

DECREE
Accordingly, the judgment is hereby affirmed as to the existence of a work-related accident. It is affirmed as to the award for TTD benefits up to the date of trial. The judgment is amended as to the continuing award for TTD past the date of trial. Further, we hereby remand the case for a determination of the Plaintiff's entitlement to SEBs pursuant to La.R.S. 23:1221(3) and the amount due, if entitled. The award for attorney's fees and penalties are affirmed. Costs of appeal are assessed against the Defendant.
AMENDED IN PART, AFFIRMED AS AMENDED AND REMANDED.
NOTES
[1] La.R.S. 23:1221(1)(c) states:

For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.