| .GOTHARD, Judge.
In this workers’ compensation matter, defendant Schneider National Bulk Carriers, Inc. (Schneider), appeals an adverse judgment that awarded benefits to claimant and cast Schneider in judgment for penalties and attorney fees. Claimant, Brian Allen, filed an answer to the appeal seeking an increase in the amount of penalties and attorney fees awarded.
The record shows that Brian Corey Allen filed a disputed claim for workers’ compensation on August 22, 2002 in which he alleged he was injured in the course and scope of his employment with Schneider in October of 2001.[1] Schneider filed an answer to the claim in which it denied that claimant had a work related injury for which compensation was due.
At the trial on the merits the parties stipulated that at the time of the alleged accident, Mr. Allen was a full time employee of Schneider earning $9.00 per hour, for a weekly average of $360.00. The parties also agreed to request that the record remain open for the future deposition of Drs. Charles Murphy and William Timothy. The request was granted by the court.
| ¡¡Claimant testified that, at the time of the accident he was employed by Schneider as a tank washer at the Reserve Louisiana terminal, having been recently promoted from a prep man. He testified that on the day of the accident, he was washing out a truck that had an excessive amount of “heel” on it. Mr. Allen explained that “heel” refers to the amount of residual chemical remaining in a truck after its use. He was instructed to run a hose from the truck to a roll-off bin, which Mr. Allen described as' a big dumpster for safely discarding chemicals. In order to accomplish this, Mr. Allen was required to stand on top of a cutting table used for repairing hoses. After he secured the hose inside of the roll-off bin, and was getting down from the table, he slipped on a hose that was on the ground and fell onto his back.
Mr. Allen stated that two other workers, Jeff Diamond, the tank wash supervisor, and Ronnie Dennis, the shift supervisor, were in the vicinity when he fell. Mr. Allen was able to get up and did not seek medical attention at that time. He stopped working to change his clothes, but did not fill out an incident report at that time. Mr. Allen explained that he could not recall the exact date of the accident because he did not make a report. The following two days Mr. Allen went to work as usual, but noticed that he was experiencing pain in his lower back that got progressively worse. On the third day the pain was so severe that Mr. Allen was unable to go to work. He called his supervisor, Mr. Diamond, and told him of the problem, then sought treatment at the Kenner Regional Medical Center Emergency Room, where he was given medication and told to follow up with his regular physician. Two days later Mr. Allen went to Dr. Charles Murphy for a followup. Dr. Murphy continued Mr. Allen’s medication and recommended a few days bed rest. Mr. Allen took the advice and remained home for a few days, and then returned to work.
*696 |4On February 27, 2002, Mr. Allen again suffered severe back pain and went to Doctors Hospital for emergency treatment. He was told he should not go back to work for a few days. Mr. Allen returned to Dr. Murphy, who treated him conservatively with medication and physical therapy. In October of 2002, Mr: Allen’s medical insurance benefits ran out, and he was unable to continue his medical treatments. Because Mr. Allen was unable to work or pay his medical bills, he called his supervisor, Jeff Diamond, to seek advice.
As a result of his consultation with Mr. Diamond, Mr. Allen completed an application for short term disability in which he indicated the disability was not work related. However, about one month later, Mr. Allen decided against seeking disability and he requested the application process be stopped. He explained that he realized after submission of ,the application for short term disability, he really needed long term disability for a work related accident.
Mr. Allen stated that, since about February 25, 2002, he has been unable to do his usual and customary work, and he needs additional medical care which he cannot afford.
On cross-examination, Mr. Allen was questioned about the emergency room report from Kenner Regional Medical Center dated November 26, 2001. The report indicates that he presented with back pain, but denied injury. Mr. Allen testified that he told emergency room doctors he fell a few days earlier, although at trial he could not remember the exact dates of the fall or the hospital visit. Mr. Allen also stated that he first reported the injury to Jeff Diamond by telephone shortly after the fall when he was unable to work; however, he did not complete any paperwork until April of 2002. Mr. Allen further admitted that he may be confused regarding the length of time between the accident and the onset of the back pain. He stated the pain actually began in his foot and leg and then radiated into his back.
IfiMr. Allen testified that he did indicate the medical disability was not caused by a work related injury in the first application for disability because he sought to get medical coverage under his general health insurance. However, he did stop that application and submitted a request for workers’ compensation shortly afterward. He further testified that he left the date of injury blank, because he could not recall it. He again stated that both Jeff Diamond- and Ronnie Dennis witnessed the fall.
The court also heard testimony from Sarina Waters-Alien, Mr. Allen’s wife. She testified that her husband came home from work on the day of the fall and told her about it. She also testified that he told her he almost fell on Jeff Diamond. Although his back was bothering him a bit, he did not seem to be in great pain. He took some Advil and went to work the next day. However, he was having severe back pain on November 26, 2001, a few days after the fall. He could not sit up or walk down the-stairs. She stated she had to flatten the seat down in the car to get him to the emergency room of Kenner Regional Medical Center. At the hospital she told medical personnel that her husband had fallen at work a few days earlier.
The record also contains the deposition of Dr. Charles Murphy, Mr. Allen’s treating physician. Dr. Murphy is a board certified orthopedic surgeon who testified that he first saw Mr. Allen on May 24, 2002. However, Mr. Allen had been treated by another physician in Dr. Murphy’s office since November 28, 2001. Dr. Murphy explained that he had all of Mr. Allen’s records starting from the November 28th visit when he saw Dr. William Timothy. At that time, Mr. Allen completed a *697 form in which he related a history of back pain, shooting down the leg and shocking pains in the right foot. He reported the pain was present for about five days. He also reported a fall about one month earlier. Mr. Allen also indicated that he went to the Kenner Regional Medical Center two days earlier, and although he felt better with bed rest, the problem was getting worse. At that time | fihe had several diagnostic tests including x-rays of the pelvis, the right ankle and right foot. Dr. Timothy also reviewed x-rays of the lumbar spine taken at Kenner Regional Medical Center. Mr. Allen’s medical record shows that on that first visit, Dr. Timothy assessed the condition as a lumbar strain with lower extremity radiculitis, and right foot pain over the fifth metatarsal area, and recommended the avoidance of any back stress. Although it was also recommended that Mr. Allen return in two weeks for a follow-up visit, he did not return until May 24, 2002. On that date, Dr. Murphy saw Mr. Allen, who complained of continued right leg pain. Mr. Allen told Dr. Murphy that the pain was off and on since the last visit but got worse in February of 2002. Mr. Allen reported that all of the problems appeared to have started in October of 2001, when he fell from a three foot high table. At that time, Dr. Murphy conducted a physical examination that showed the patient to be alert, oriented, cooperative and overweight. His gait pattern demonstrated guarding, secondary to spine pain. Dr. Murphy testified his impression was that Mr. Allen had low back pain, right sciatica with right SI radiculopathy, and a probable herniated disc. His condition was worsened by obesity. After the examination, Dr. Murphy recommended activity modifications to avoid all stress to the back, and rest to reduce pain. The doctor opined that Mr. Allen was not capable of working in his usual and customary job. Dr. Murphy recommended an MRI scan of the lumber spine and an EMG nerve conduction study of the right leg. The MRI taken on May 31, 2002 demonstrated a large right-sided posterior lateral disc herniation at L5-S1. The EMG conduction study performed on June 6, 2002 was consistent with mild to moderate subacute right SI radiculopathy. The ensuing diagnosis was a large right-sided posterior lateral disc herniation at L5-S1 with SI radiculopathy. Dr. Murphy stated emphatically that Mr. Allen was disabled from manual labor, including the tank washing he was doing before.
17I)r. Murphy testified that Mr. Allen’s obesity made him susceptible to back injury, but in his opinion it is “more probable than not” that the fall contributed to the condition. More specifically, Dr. Murphy testified that the fall caused the actual herniation, or at the least, the onset of symptoms.
At a consultation with Mr. Allen on June 11, 2002, Dr. Murphy explained the condition and treatment options. Mr. Allen began physical therapy and was somewhat improved by July 29, 2002. He was now willing to proceed with a trial of an epidural steroid injection and was referred to Dr. Amy Phalen. It is not clear from Dr. Murphy’s records whether the injections were performed. On January 9, 2003, Mr. Allen was still having low back pain, but now it had shifted more to the left side. He reported his leg pain was much improved, but there was still some numbness in the toes. Dr. Murphy again recommended injections of anti-inflammatory medication and an evaluation by Dr. Phalen. However, Mr. Allen did not return and Dr. Murphy did not know if those recommendations were followed. Dr. Murphy confirmed that Mr. Allen was still unable to perform manual labor. However, he did state that it would be possible *698 for Mr. Allen to return to work provided some modifications could be made.
Also introduced into evidence are the depositions of Jeff Diamond and Ronnie Dennis. In his deposition, Mr. Diamond testified that he was the manager of the tank cleaning division at the Schneider facility in Reserve from September of 2000 through July of 2002. In that capacity he hired and supervised Mr. Allen as part of the cleaning crew. Mr. Diamond recalled that Mr. Allen reported a fall from a table in which he was injured. Mr. Diamond stated that he did not witness the incident, and found it odd that he was listed as a witness. Mr. Diamond testified that Mr. Allen called to say that he would not be in one day because he had fallen off of a table used for hose cleaning the previous day and injured his back. Mr. Diamond considered that conversation to be a report by Mr. Allen of a |Rwork related injury and forwarded the information to one of his supervisors, although he could not recall if it was Mark Peters or Doug Dickinson. Mr. Diamond also stated that he conducted interviews with Mr. Allen and Ronnie Dennis while investigating the incident, but could not remember specifically what information was gleaned, or the ultimate results of the investigation.
Mr. Diamond did recall that Mr. Allen reported the accident several days after the fall, on a Monday, and informed Mr. Diamond that it was necessary to seek medical attention at an emergency room on Sunday. Mr. Diamond acknowledged that Mr. Allen subsequently discussed the possibility of filing a claim for short term disability with him. Mr. Diamond stated he went through the employee handbook with Mr. Allen and put him in contact with the “right people” to handle the claim, but Mr. Diamond did not do any of the actual paperwork personally. Mr. Diamond recalled that in his conversations with Mr. Allen regarding the short term disability claim, Mr. Allen’s concern was the company may deny the accident happened at work and leave him without compensation. Therefore, he wanted to try to get short term disability under his medical insurance. Mr. Diamond did not recall Mr. Allen requesting the claim be withdrawn.
Ronnie Dennis testified he worked with Mr. Allen and was a witness to his fall. He also stated that Jeff Diamond was present when the incident occurred. Mr. Dennis testified that he and Mr. Diamond were discussing work to be done when Mr. Allen slipped on a hose and fell flat on his back. Both he and Mr. Diamond asked if Mr. Allen was injured. When Mr. Allen got up and said he was alright, the three men went back to work. Mr. Dennis did not know if any report of the accident was made, and he denied ever discussing the incident with anyone at work including Mr. Diamond. He did recall that in subsequent days, Mr. Allen complained of back pain.
IflThe record also contains documentary evidence including medical reports, bills and legal fees. After considering the evidence, the trial court rendered judgment finding that Mr. Allen did have a work-related accident, and was entitled to temporary total disability (TTD) benefits from February 28, 2002 through May 28, 2002, and supplemental earnings benefits (SEB) from May 24, 2002. Further, the judgment held that claimant was entitled to payment of all medical expenses arising from the injuries sustained. The judgment found defendants were “arbitrary and capricious” in their refusal to pay workers’ compensation and assessed a penalty in the amount of $2,000.00 and attorney fees in the amount of $5,000.00.
In brief to this court, defendant assigns three errors. In the first two he argues that the trial court erred in finding *699 that claimant was injured in a work-related accident and was entitled to compensation. The arguments on both of these assignments regard the finding of facts made by the trial court.
To be entitled to workers’ compensation benefits, a claimant must show that there was a work-related accident which caused a compensable injury. Wiley v. Dijon Services, Inc., 02-242 (La.App. 5 Cir. 10/16/02), 831 So.2d 317; writ den., 02-2612 (La.12/13/02), 831 So.2d 990. The claimant bears the burden of proving a causal connection to a work related accident by a preponderance of the evidence. Id. Our standard of review regarding factual determinations in workers’ compensation matters is governed by the manifest error standard. Wise v. H.B. Zachary Co., 00-3 (La.App. 5 Cir. 4/25/00), 760 So.2d 500.
The thrust of defendants’ argument is the uncertainty of the date on which the alleged fall occurred and the failure to file an injury report. Defendant also argues the fact that claimant filed a claim for disability under his medical insurance in which he stated this was not a work-related injury is determinative. We do not find these arguments persuasive. It is clear from the evidence that Mr. Allen fell [ inon his back at work in November of 2001. Both Mr. Allen and Mr. Dennis testified to the fall. Mr. Diamond, although denying he witnessed the fall, admitted that claimant called a few days later to report the incident and the injury. Further, Mr. Diamond acknowledged that he considered that to be an accident report and passed the information on to appropriated parties in defendants’ employ. Moreover, Mr. Diamond also acknowledged that he discussed with Mr. Allen the possibility of applying for disability benefits under the medical coverage. We can understand how a worker, who had exhausted his medical insurance and is denied workers’ compensation by his employer, would consider this as an option. Further, defendant has not successfully disputed the assertion that the claim was withdrawn shortly thereafter.
We find sufficient evidence to support the factual finding that claimant suffered an on the job injury. Our position is not without precedent. Recently, in Hughes v. Wal-Mart Stores, Inc., 03-943 (La.App. 5 Cir. 12/30/03), 864 So.2d 718 at 721, this court stated:
.it has been held that an employee that finishes the work day without reporting an accident which occurred during that day is not barred from receiving workers’ compensation since the full consequences of the disabling accident are not always apparent when the injury occurs. A workers’ compensation claimant is not barred from recovery because he or she did not immediately realize the full extent of his or her work-related injury when it happened. (internal citations omitted)
As part of the argument, defendant also states the claimant did not meet his burden of proof that he was due TTD benefits. To be entitled to TTD benefits, a claimant must prove by clear and convincing evidence that he is unable to engage in any employment. La. R.S. 23:1221(1)(c). Sarrio v. Stalling Construction Company, 04-34 (La.App. 5 Cir. 5/26/04), 876 So.2d 157. “Clear and convincing” in the workers’ compensation context is “an ‘intermediate’ standard falling somewhere between the ordinary preponderance of the evidence Incivil standard and the beyond a reasonable doubt criminal. standard.” Hatcherson v. Diebold, Inc., 00-3263 (La.5/15/01), 784 So.2d 1284, 1288 (citing Black’s Law Dictionary 227 (5th ed.1979)).
Here, the claimant has shown an accident, and his testimony and that of his *700 treating physician are sufficient to establish an injury resulting from that accident. Further, Dr. Murphy stated emphatically that Mr. Allen cannot return to manual labor and specifically cannot continue the work of cleaning tanks. Therefore, we find the claimant has met his burden of proof that he is entitled to TTD for the period awarded. Because his treating physician opined that Mr. Allen could now do light work with restrictions, we find the court was correct in awarding SEB. See; Sarrio v. Stalling Construction Company, supra.
In the final assignment of error, defendant argues the trial court erred in its finding of arbitrary and capricious failure to pay workers’ compensation benefits, and in awarding penalties and attorney fees.
 La. R.S. 28:1201 F provides for the assessment of penalties and fees when medical benefits are not paid timely pursuant to the workers’ compensation statute. The award of penalties for failure to pay workers’ compensation benefits is penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Penal provisions, including those in the workers’ compensation statutes must be strictly construed. Hughes v. Wal-Mart Stores, Inc., supra. If the claim may be reasonably controverted, or nonpayment results from conditions over which the employer had no control, penalties will not apply. La. R.S. 23:1201 F(2).
Initially we observe that the arbitrary and capricious standard no longer applies in this context. In Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, the Supreme Court fully discussed this issue. In Brown, 721 So.2d at 889, the court concluded that a lesser standard is appropriate when assessing penalties and attorney fees in cases where the employer has failed to timely pay benefits, concluding that La. R.S. 23:1201 unambiguously states that “penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control.” Id., 721 So.2d at 890.
To reasonably controvert a claim, an employer must have some valid reason or evidence upon which to base the denial of benefits. As explained further in Brown, supra, 721 So.2d at 890:
.to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed.
Awards of penalties are based on factual findings made by the workers’ compensation judge, and may not be overturned by this court absent a finding of manifest error. Barbarin v. TLC Home Health, 02-1054 (La.App. 5 Cir.4/29/03), 845 So.2d 1199.
Applying the above cited principals of law, we find no error in the award of penalties and attorney fees. In its argument on this issue, defendant herein has offered no reason for its failure to timely pay benefits. It merely repeats its argu *701 ments on the prior two assignments of error. There is no showing that defendant had any factual or medical information to reasonably counter the factual and medical information presented by the claimant. On the contrary, defendant’s employees testified about the accident and the report made by claimant to his supervisor. It was also clear from defendant’s witnesses that this information was | ispassed on to appropriate parties and was investigated. Nothing in the testimony of Jeff Diamond or Ronnie Dennis suggests otherwise. See, Sarrio v. Stalling Construction Co., supra.
As previously mentioned, the claimant has filed an answer to defendant’s appeal requesting this court to award additional penalties and attorney fees. We find no merit in this argument, such awards are punitive and cannot be justified without a substantial reason. The judgment of the trial court awards $2,000.00 in penalties for failure to timely pay workers’ compensation benefits, and $5,000.00 in attorney fees. We find this to be adequate.
For the above reasons we affirm the judgment of the trial court. Costs of this appeal are assessed to defendant.

AFFIRMED.

. The accident date was later corrected to November 21, 2001.