# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-0325


**LEROY THIBODEAUX**

**VERSUS**

**NATIONAL OILWELL, INC.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 3
PARISH OF CALCASIEU, NO. 02-01871
CHARLOTTE BUSHNELL, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


**OSWALD A. DECUIR**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Oswald A. Decuir, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**


**Kevin L. Camel**
**Cox, Cox, Filo & Camel**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**Counsel for Plaintiff/Appellant:**
**Leroy Thibodeaux**

**Shannon Seiler Dartez**
**Hurlburt, Privat & Monrose**
**P. O. Drawer 4407**
**Lafayette, LA 70502**
**(337) 237-0261**
**Counsel for Defendant/Appellee:**
**National Oilwell, Inc.**

**DECUIR, Judge.**

Leroy Thibodeaux sustained injuries to his knee and ankle in the course and scope of his employment with National Oilwell, Inc. on November 27, 2000. National Oilwell promptly paid indemnity benefits and authorized payment of all necessary medical treatment. However, when Thibodeaux later developed new symptoms which indicated a possible back injury, National Oilwell refused to authorize payment for further testing, which testing may have revealed the cause of the complaints. Thibodeaux filed a disputed claim for benefits, and the workers' compensation judge ordered National Oilwell to pay for the recommended testing. Penalties and attorney fees were denied. Both Thibodeaux and National Oilwell have appealed. Thibodeaux contests the denial of penalties and attorney fees, and National Oilwell disputes the finding that further medical testing is related to the workers' compensation injury. Upon review, we affirm the judgment rendered below.

At the time of the accident, Thibodeaux and another employee were loading pipe onto a delivery truck. Thibodeaux slipped over other pipes that were lying on the ground, injuring both his right ankle and his left knee. The ankle injury healed in a few weeks, but the knee injury, a torn anterior cruciate ligament, required two surgeries and physical therapy. After the second surgery, Thibodeaux continued to complain of feelings of instability in the knee, and he developed numbness in the left thigh. He also suffered from low back pain. He was referred to a neurologist, Dr. Reynaud Odenheimer, who ordered nerve conduction studies, an EMG, and an MRI. National Oilwell refused to authorize these tests, and this litigation ensued.

In deposition testimony, Dr. Odenheimer was unable to ascertain the cause of Thibodeaux's newly developed neurological complaints and low back pain, but he did say the tests would help determine if the complaints were the result of the original accident or surgery or if they were symptoms of lumbar spine disease, as he

suspected.  In reports sent to National Oilwell by Dr. Odenheimer and Dr. Allan Hinton, the orthopedic surgeon who performed Thibodeaux's knee surgery, both doctors indicated the recommended tests were reasonable, necessary, and related to the employment injury.  After a hearing, the workers' compensation judge ruled the tests were compensable, as reasonable and necessary medical expenses, but the claim for penalties and attorney fees was denied.  We find no error in this conclusion.

The medical evidence and deposition testimony demonstrate the need for evaluation of Thibodeaux's neurological complaints and back pain.  Those symptoms appeared more than a year after the work-related accident and quite possibly could have been caused by the accident, the subsequent knee surgeries, or the rehabilitation efforts after surgery.  However, both doctors testified the same symptoms can be caused by a host of other factors, including such circumstances as diabetes, the tightness of a belt, or an unrelated back injury.  While Dr. Hinton's initial comments to National Oilwell concerning the testing recommended by the neurologist described the neurological disturbance as the result of the original injury, his notes and deposition testimony were equivocal regarding causation.  Similarly, Dr. Odenheimer was unable to surmise the origin of Thibodeaux's complaints.

After reviewing the evidence, the workers' compensation judge ruled the diagnostic testing recommended by Dr. Odenheimer was medically necessary, and she ordered National Oilwell to pay for those tests.  Our evaluation of the evidence reveals no manifest error in this conclusion.  There was evidence that Thibodeaux's newly reported symptoms may have been related to the employment injury or to his knee surgery, and the results of the testing may reveal both the cause of the symptoms and an accurate diagnosis.  Hence, National Oilwell was properly ordered to pay for the recommended testing.

Nevertheless, because of the equivocal medical opinions and the length of time between the employment injury and the manifestation of the neurological symptoms, we also find no manifest error in the denial of penalties and attorney fees. The Workers' Compensation Act provides for the assessment of penalties and attorney fees for failure to pay benefits timely unless the claim for benefits is reasonably controverted or unless the failure to pay results from circumstances over which the employer had no control. La.R.S. 23:1201; *Brown v. Texas-LA Cartage, Inc.,* 98-1063 (La. 12/1/98), 721 So.2d 885. In applying the manifest error-clearly wrong standard of review to an award or denial of penalties and attorney fees, "the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one." *Noel v. Home Health 2000, Inc.,* 01-1543 (La.App. 3 Cir. 5/8/02), 816 So.2d 955. We find the trial court's decision to deny penalties and attorney fees in this case was reasonable.

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to National Oilwell, Inc.

**AFFIRMED.**