# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-585

EASTON PHARMACY, INC.

VERSUS

KELLI BULLER

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF EVANGELINE, NO. 09-08639
JASON GERARD OURSO, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED AS AMENDED.**

**Chuck Randall West**
**West & Vidrine**
**Post Office Box 1019**
**Ville Platte, LA   70586**
**(337) 363-2772**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Kelli Buller**

**Jennifer E. Frederickson**
**Stemmans & Alley, PLLC**
**2798 O'Neal Lane, Suite B3**
**Baton Rouge, LA   70816**
**(225) 752-5266**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Easton Pharmacy, Inc.**

**AMY, Judge.**

In this workers' compensation matter, the employer provided compensation benefits after the subject employee sustained injury in a work-related fall. However, the employer disputed the need for a lumbar fusion sought by the employee and for certain prescribed medications. It also alleged that the employee made misrepresentations in order to obtain compensation benefits in violation of La.R.S. 23:1208. In response, the employee sought penalties and attorney fees for the denial of the surgery and medication. The workers' compensation judge found in favor of the employee, ordering the employer to provide the surgery and imposing penalties and attorney fees. The judge also denied the claim for La.R.S. 23:1208 sanctions. For the following reasons, we amended the amount of penalties award and affirm as amended.

## Factual and Procedural Background

The record indicates that Kelli Buller was employed as a pharmacy technician at Eastin[1] Pharmacy in August 2003, when she fell from a stool allegedly injuring her back. The employer began paying compensation benefits, including four surgical procedures. However, this dispute arose when Ms. Buller's physician, Dr. George Williams, recommended an anterior lumbar interbody fusion at the L5-S1 level. Ms. Buller had previously undergone a fusion at the same level, but the surgery had ultimately resulted in a non-union of the area.

Following Dr. Williams' recommendation of the fifth surgery, the employer sought review of the necessity of the procedure from Dr. Gregory Gidman, also an orthopedist. Dr. Gidman explained that the recommended surgery was a viable option if desired by Ms. Buller. However, he explained that his prognosis of the results of

---

[1] The record lists the employer as both "Eastin" and "Easton." In this discussion, we use the former spelling insofar as this usage appears on both the claim form and in the judgment under review.

such a procedure was "guarded." He explained that this was true in light of Ms. Buller's poor results from the earlier surgeries.

Accordingly, the employer filed this matter in October 2009, disputing the necessity of the surgery. Later, the employer amended its claim, alleging that Ms. Buller violated La.R.S. 23:1208 by failing to disclose information regarding prior injuries. It also alleged that she exaggerated the physical limitations caused by the work-related injury.

Ms. Buller answered the claim, seeking approval of the anterior lumbar interbody fusion recommended by Dr. Williams and, later, approval of certain medications. Ms. Buller also pursued an award of penalties and attorney fees due to the denial of the surgery.

The workers' compensation judge ultimately ordered that the employer provide the recommended surgery and the medication claimed by Ms. Buller, finding these items reasonable and necessary. The judgment included an award of penalties in the amount of $8,000 and attorney fees in the amount of $10,000 due to the failure to approve surgery. The workers' compensation judge also found that the employer failed to carry its burden of proof under La.R.S. 23:1208.

The employer appeals, assigning the following as error:

1.    The workers' compensation judge committed error or manifest error in finding that claimant did not violate La.R.S. 23:1208.

2.    The workers' compensation judge committed error or manifest error in finding that the anterior lumbar interbody fusion recommended by Dr. George Raymond Williams is medically necessary and awarding same.

3.    The workers' compensation judge committed error or manifest error in finding that the prescription in dispute are related to the accident at issue and awarding same.

4.    The workers' compensation judge committed error or manifest error in finding that the employer was arbitrary and

2

capricious to deny the lumbar fusion, awarding penalties and attorney fees, and the amount thereof.

## Discussion

*Willful Misrepresentation of Facts*

The employer questions the determination that Ms. Buller did not violate La.R.S. 23:1208 due to what it contends were misrepresentations regarding her physical limitations, disability, subsequent injuries, and prior medical or psychological conditions. The employer argues that, not only did Ms. Buller fail to reveal prior injuries and accidents, but that she exaggerated the limitations posed by her injury.

In this regard, La.R.S. 23:1208 provides, in part, that:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In reasons for ruling, the workers' compensation judge explained that it made "a specific finding of fact that Kelli Buller was a credible witness based upon viewing her testify in open court and despite any inconsistencies alleged by the employer. This credibility serves as a basis for the Court's Judgment, including but not limited to the denial of the fraud allegations." On appellate review, a workers' compensation judge's determination as to whether an employee forfeited his or her right to benefits under La.R.S. 23:1208 is a factual question, which will not be reversed in the absence of manifest error. *Armand v. Denton-James, L.L.C.*, 08-920 (La.App. 3 Cir. 2/4/09), 2 So.3d 1272.

3

Although it is unquestioned that Ms. Buller failed to disclose certain previous conditions, either to her physicians or at her pre-hearing deposition, the instances complained of by the employer were not of a nature so as to require a determination that they were willfully made in order to obtain benefits. Instead, based on both the questioning and Ms. Buller's explanations, the workers' compensation judge could have permissibly determined that Ms. Buller failed to appreciate the medical or technical aspects behind the questions as posed by either counsel or her physicians.

Certainly Ms. Buller did not disclose, at various times, that she had previously received treatment for back pain. Notably, in 1999, Ms. Buller received steroid injections in the lumbar region due to back pain and an MRI taken at that time revealed a herniation at the L5-S1 level. However, and while Ms. Buller testified that she thought she had told her physicians of her earlier back compliants, she further testified that she reported what she was told, i.e., that the 1999 MRI did not disclose a condition with her back. On this point, a report from Ms. Buller's orthopedic surgeon indicated that the disc bulge revealed on the 1999 MRI did not evidence nerve root compressions and that he was doubtful that this was the cause of her back complaints. Also, Dr. Williams explained that the 1999 MRI substantially differed from those resulting from her 2003 work-related accident. Further, Ms. Buller stated that the pain she experienced when being treated in 1999 differed from the pain experienced from the subject accident.

The employer also asserts that Ms. Buller denied having been previously treated for any type of psychological disorder or mental condition before the accident at issue. Yet, the employer is able to point to earlier records indicating that Ms. Buller was treated with a number of medications for depression. At the hearing, Ms. Buller acknowledged these past occurrences of depression and that she had not revealed the condition when asked during her deposition whether she had ever received treatment

4

for a "psychological or mental condition." Ms. Buller stated simply that she did not think her earlier depression qualified as a "mental illness." Further, Ms. Buller, did, in fact, reveal her prior treatment when she was treated in 2004 for pain management issues by Dr. Steven Staires.

Further, a portion of Ms. Buller's claim involved prescriptions issued for reflux allegedly caused by her pain medication. However, the employer questions Ms. Buller's denial in her deposition that she "hadn't had a problem with stomach medication, before[.]" But, the employer observes that Ms. Buller had been issued a number of prescriptions for Prevacid and Phenargin before this accident. Ms. Buller stated that she had not revealed this treatment at her deposition because she had forgotten.

Moreover, the employer also relies on the fact that Ms. Buller denied involvement in an accident subsequent to the 2003 work-related fall. She was, however, involved in an automobile accident in 2005. At the hearing, Ms. Buller admitted being a passenger in a vehicle involved in an accident and that she was taken to the emergency room afterwards. She explained that she did not inform her physician about the accident on her subsequent visit because she had forgotten about it and, furthermore, that the accident had not changed her symptoms. She stated that she did not make a claim for personal injuries after the 2005 accident.

Finally, the employer argues that Ms. Buller's contention that the injury has limited her physical activities is contradicted by surveillance tape. While the employer contends that the surveillance tape reveals Ms. Buller engaging in activities outside of her limitations, the footage was submitted into evidence. It was within the workers' compensation judge's fact finding role to evaluate this evidence of Ms. Buller's movement. We find no manifest error in its conclusion that the evidence did not warrant a finding that Ms. Buller misrepresented her capabilities.

5

In sum, we find no merit in the employer's contention regarding La.R.S. 23:1208. Although various inconsistencies existed in the multiple-year progression of this suit, the evidence regarding these alleged misrepresentation was not so compelling as to require a reversal of the determination that any such misrepresentations were willful for the purpose of obtaining benefits.

*Necessity of Surgery*

The employer next questions the order that it provide an anterior lumbar interbody fusion at the L5-S1 level, a procedure it argues is not medically necessary. The employer observes that Dr. Gidman expressed doubt regarding a positive outcome from the procedure and that the physician who performed an independent medical examination, also opined that the fusion was not a "medical necessity."

Louisiana Revised Statutes 23:1203(A) requires that, in all cases covered by the workers' compensation provisions, an employer "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal[.]" A workers' compensation judge's determination as to the medical necessity of claimed treatment is a question of fact subject to the manifest error standard of review. *Cajun Welding & Machine Co. v. Deville*, 03-0548 (La.App. 3 Cir. 11/5/03), 858 So.2d 875.

Our review of the record reveals support for the order of the recommended procedure. The employer's focus on the physicians' opinion regarding the "medical necessity" of the procedure lacks sufficient acknowledgement of the larger context of the discussion of the surgery. The medical evidence and testimony indicates that Ms. Buller's prior fusion at the L5-S1 level resulted in a non-union. There was speculation about the "viability" of a positive result given her prior poor results. However, both Dr. Gidman and the physician performing the IME suggested that the

surgery recommended by Dr. Williams would be appropriate if chosen by the claimant.

In fact, the IME physician's statement in his September 10, 2010 reveals that:

> I agree that this lady has a nonunion at the L5-S1 site of the previously instrumented posterior L5-S1 fusion. No bone masses were noted between the transverse process of the L4 and 5 and the CAT scan indicates some lucency around the S1 pedicle screws. I do not think that it is a medical necessity that she undergo the fusion. I think that it is her decision as to whether she accepts the nonunion with chronic discomfort or consider the recommended anterior interbody fusion. I do consider the anterior interbody fusion to be a medical necessity to obtain a solid fusion between the L5-S1 vertebral bodies. I agree with Dr. Williams in that this procedure does have some substantial risks compared to the posterior fusion and that if she were to obtain a solid fusion she has a substantial chance of reducing the posterior midline pain. A solid fusion offers her the potential of increasing her physical capabilities. On the other hand, if she does develop a nonunion (after the anterior interbody fusion) she would continue with posterior lumbar area pain.

Neither did Dr. Gidman suggest merely that the surgery was not medically necessary. Taken in context, Dr. Gidman explained that he had given a guarded prognosis for the fusion in light of the prior failed treatment. He testified that given Ms. Buller's situation of likely having "a loose screw in the back," she would have two options for future treatment. Either "you could leave her alone" and "accept the condition as is," or "if it causes a lot of pain," she could proceed with the re-fusion. Dr. Gidman stated that such a procedure would be "a big deal," but those are "your two choices." He explained that it was possible that Ms. Buller would have a significant decrease in her pain after the recommended procedure, but that it was not probable.

While the physicians relied upon by the employer were reserved in their expectations of the surgery recommended by Dr. Williams, we do not find that their opinions, taken in context, undercut the workers' compensation judge's determination regarding the necessity of the lumbar fusion.

This assignment lacks merit.

*Medication*

The employer also questions whether the workers' compensation judge erred in awarding anti-depression medication prescribed to Ms. Buller. It contends that Ms. Buller failed to prove that the need for the medication was caused by the work-related accident in light of previous treatment for depression, as discussed above.

While the claim regarding causation as it relates to the depression medication is not abundantly supported, we do not disturb the workers' compensation judge's award. Notably, the medication was prescribed by a physician managing Ms. Buller's pain due to her work-related accident. Ms. Buller testified that, although she had previously been on anti-depression medication, she felt her depression resulted from her work-related accident. She explained that after each of the four back surgeries following her accident, her pain had returned. Ms. Buller testified that the medication was required because "since the accident, [her] life is not what it used to be, and to take the edge off of life." She denied that anyone had told her that the depression medication prescription was due to any other reason.

Thus, we find no manifest error in the determination that the depression medication as prescribed "is reasonable and necessary."

*Penalties and Attorney Fees*

Finally, the employer questions the determination that its denial of the anterior lumbar interbody fusion was arbitrary and capricious, a finding underlying the award of penalties and attorney fees. The employer also questions the quantum of the $8,000 penalty awarded. It asserts that, if a penalty is appropriate, the penalty should have been assessed pursuant to La.R.S. 23:1201(F), which limits the applicable penalty to $2,000, rather than pursuant to La.R.S. 23:1201(I), which permits a penalty of up to $8,000. While we find no manifest error in the decision to impose penalties and attorney fees for the failure to authorize the lumbar fusion, we conclude that the

8

workers' compensation judge erred in the manner in which penalties were awarded. We amend the judgment accordingly.

In this case, the workers' compensation judge concluded that the employer's "termination" of benefits, i.e., the failure to approve the recommended back surgery, was arbitrary and capricious. This terminology appears to order an award of penalties and attorney fees under La.R.S. 23:1201(I)(emphasis added), which provides that:

> Any employer or insurer who at any time *discontinues* payment of claims due and arising under this Chapter, when such discontinuance is found to be *arbitrary, capricious, or without probable cause*, shall be subject to the payment of *a penalty not to exceed eight thousand dollars and a reasonable attorney fee* for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

However, in this case, it is clear that the failure to authorize the surgery was not a discontinuance of benefits. Instead, the employer failed to provide a required benefit. Thus, the penalties and attorney fees were awardable under La.R.S. 23:1201(F). This paragraph provides for the imposition of penalties and attorney fees "for failure to provide payment in accordance" with the compensation provided for in that section. Paragraph (F) establishes that a penalty awarded thereunder may be assessed:

> in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; *however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim*. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.

The above-prescribed penalty is not warranted if the claim is reasonably controverted. La.R.S. 23:1201(F)(2). Thus, the applicable penalty was awardable under Paragraph

F, and should have been limited to $2,000 for the claim regarding the failure to provide the fusion surgery.[2] We amend the penalty award in this regard.

Subject to this amendment, we affirm the award of penalties and attorney fees insofar as the record supports a determination that the failure to approve the surgery was not reasonably controverted.[3] The employer seemingly denied the surgery based on fortuitous language from Dr. Gidman indicating that his prognosis for the recommended surgery was "very guarded." Yet, reference to Dr. Gidman's larger report indicated that the surgery was a "viable surgical option" to offer Ms. Buller. In his subsequent deposition, Dr. Gidman suggested that although improvement in Ms. Buller's condition was not probable if she chose the fusion, it was possible. Again, he concluded that the choice as to how to proceed was one open to Ms. Buller.

In light of the employer's continued refusal to authorize the recommended surgery despite knowledge that it was discussed as an option for treatment by both Dr. Gidman and the physician performing the IME, we find no manifest error in the decision to impose a penalty. As stated above, however, we amend that penalty to reflect a total of $2,000 for the failure to approve surgery.

**DECREE**

For the foregoing reasons, that portion of the workers' compensation judgment is amended to reflect a penalty in the amount of $2,000 rather than a penalty of $8,000. That portion of the judgment is recast as follows:

---

[2] We do not find it appropriate to amend the judgment to include an additional $2,000 award for failure to approve payment of the depression medication as the judgment reflects merely that: "[t]he termination of compensation benefits was arbitrary and capricious, thus entitling claimant to an award of $8,000.00 in penalties for the failure to approve surgery."

[3] The judgment indicates that the workers' compensation judge determined that the employer's actions were "arbitrary and capricious" whereas La.R.S. 23:1201(F) provides for a penalty unless the failure to provide benefits was "reasonably controverted." However, "'[u]nreasonably controverting a claim . . . requires action of a less egregious nature than that required for arbitrary and capricious behavior[.]'" *Green v. Nat. Oilwell Varco*, 10-1041, p. 16 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 364 (quoting *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 8 (La. 12/1/98), 721 So.2d 885, 890).

10

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the refusal to provide the anterior lumbar interbody fusion at L5/S1 recommended by Dr. George Raymond Williams was not reasonably controverted, thus entitling claimant to an award of $2,000.00 in penalties for the failure to approve surgery, and an award of $10,000.00 in attorney fees.

We otherwise affirm the judgment as amended. All costs of this proceeding are assessed to the appellants, Eastin Pharmacy, Inc. and Retailers Casualty Insurance Company.

**AFFIRMED AS AMENDED.**