# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-0054

MANUEL LUMPKIN

VERSUS

A.B.E.L. TRUCKING OF LOUISIANA LLC

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 08-20223
HONORABLE SHARON M. MORROW
WORKERS' COMPENSATION JUDGE

************

### JIMMIE C. PETERS
### JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**William A. Repaske**
**Landry, Watkins, Repaske & Breaux**
**Post Office Drawer 12040**
**New Iberia, LA 70562**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Manuel Lumpkin**

**Amanda H. Carmon**
**Johnson, Stiltner & Rahman**
**2237 S. Acadian Thruway, Ste. 102**
**Baton Rouge, LA 70808**
**(225) 231-0934**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **A.B.E.L. Trucking of Louisiana, LLC, and**
 **Louisiana Workers' Compensation Corporation**

PETERS, J.

The defendant, A.B.E.L. Trucking of Louisiana LLC (A.B.E.L.), appeals the judgment of the workers' compensation judge (WCJ) classifying the plaintiff, Manuel Lumpkin, Jr., as a commission worker for the purpose of determining his indemnity benefits pursuant to the Workers' Compensation Act. For the following reasons, we affirm the WCJ's judgment.

## DISCUSSION OF THE RECORD

The facts of this matter are not in dispute and were stipulated to during the trial on the merits. Mr. Lumpkin was hired by A.B.E.L. on October 13, 2007, as a truck driver during the sugarcane grinding season. His pay was based on a commission of thirty-three percent of each load that he hauled to the mill. He suffered a work-related injury to his left knee on December 19, 2007. Mr. Lumpkin has remained disabled since his injury and has received weekly indemnity benefits from A.B.E.L. in the amount of $139.00.

The underlying issue in this litigation is the calculation of the average weekly wage upon which the weekly indemnity benefit rate is based. Mr. Lumpkin asserts that the average weekly wage should be calculated pursuant to La.R.S. 23:1021(12)(d), and this calculation would yield a correct weekly indemnity benefit of $522.00 per week. Based on A.B.E.L.'s underpayment, he suggests he is entitled to the difference between that paid and that owed, together with an award of penalties and attorney fees. On the other hand, A.B.E.L. argues that the appropriate calculation of the average weekly wage should be calculated using La.R.S. 23:1021(12)(a)(v) which provides for employees engaged in seasonal employment. This calculation would yield a correct weekly indemnity benefit of $139.99.

At the trial on the merits, the litigants stipulated to the following facts:

1)    Mr. Lumpkin was employed as a truck driver by A.B.E.L. only during the sugarcane grinding season.

2)    Mr. Lumpkin only worked for A.B.E.L. for fifty-six days.

3)    Mr. Lumpkin's rate of pay was by commission:  a percentage of each load that he hauled.

4)    A.B.E.L. paid Mr. Lumpkin $7,310.00 in 2007.

5)    Mr. Lumpkin mailed a written demand for recalculation of his indemnity benefits on December 3, 2008.

6)    A.B.E.L. has paid and continues to pay Mr. Lumpkin indemnity benefits in the amount of $139.00 per week.

Based on the evidence before it, the WCJ concluded that although Mr. Lumpkin's employment was seasonal, the fact that he was paid by commission required that the workers' compensation rate be based on the calculation most favorable to him, i.e., his rate of pay based on the wages he received via commission.  The WCJ further concluded that because there existed a valid question as to how Mr. Lumpkin's compensation rate should be calculated, A.B.E.L. should not be cast with penalties and attorney fees for calculating his rate based on the seasonal employee provision.

A.B.E.L. appealed this judgment, arguing primarily that the WCJ erred in failing to apply the seasonal employment formula in calculating the average weekly wage. Mr. Lumpkin answered the appeal, asserting that the WCJ erred in denying his request for penalties and attorney fees, and seeking additional attorney fees for work performed on appeal.

**OPINION**

It is well established that the workers' compensation act is remedial in nature and that in order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52 (La.1993); *Glascock v. Georgia-Pacific Corp.*, 25,677 (La.App.2d. Cir.3/30/94), 635 So.2d 474.  An appellate court may overturn a

2

judgment of a WCJ if she made a factual finding which is manifestly erroneous or if she made an error of law, in which case, her decision is owed no deference by a reviewing court. *Box v. City of Baton Rouge*, 2002-0198 (La.App. 1st Cir.4/2/03), 844 So.2d 405.

*Roan v. Apache Chem. Transporters*, 37,671, p. 3 (La.App. 2 Cir. 9/24/03), 855 So.2d 920, 923.

Louisiana Revised Statutes 23:1021(12) (emphasis added) reads in pertinent part:

(12) "Wages" means average weekly wage at the time of the accident. The average weekly wage *shall* be determined as follows:

**(a) Hourly wages.**

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or

(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or

(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.

(iv) A part-time employee, as defined in R.S. 23:1021(9) and who is employed by two or more different employers in two or more successive employments, shall be entitled to receive benefits as follows:

(aa) If an employee is employed by two or more different employers in two or more successive employments and the employee incurs a compensable injury under the provisions of this Chapter in one of the employments, the employer in whose service the employee was injured shall pay the benefits due the employee as provided in this Chapter.

(bb) If the employee is a part-time employee in one of the successive employments, is injured in that employment, but as a result of the injury also incurs loss of income from other successive employments, that employee shall be entitled to benefits computed by determining wages under the provisions of this Subsection using his hourly rate in employment at the time of injury and using the total hours worked for all employers of the part-time employee, but not to exceed his average, actual weekly hours worked or forty hours weekly, whichever is less.

(v) For an employee in seasonal employment, his annual income divided by fifty-two.

(aa) For purposes of this Subparagraph, seasonal employment shall be any employment customarily operating only during regularly recurring periods of less than forty-four weeks annually.

(bb) If the employee was not engaged in the seasonal employment more than one year prior to the accident, his annual income shall be the average annual income of other employees of the same or most similar class working in the same or most similar employment for the same employer or, in the event that the employee was the only individual engaged in that specific employment, then his annual income shall be the average annual income of the other employees of the same or most similar class working for a neighboring employer engaged in the same or similar employment.

**(b) Monthly wages**. If the employee is paid on a monthly basis, his monthly salary multiplied by twelve then divided by fifty-two.

**(c) Annual wages**. If the employee is employed at an annual salary, his annual salary divided by fifty-two.

**(d) Other wages.** If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.

4

A reading of the quoted language from La.R.S. 23:1021(12) makes it clear that had Mr. Lumpkin been paid a specific wage by A.B.E.L., his average weekly wage for the calculation of weekly indemnity benefits would be properly calculated under La.R.S. 23:1021(12)(v). It is equally clear that had Mr. Lumpkin been employed in something other than a seasonal employment situation, his average weekly wage would be calculated pursuant to La.R.S. 23:1021(12)(d) because he was paid by commission.

The question expressly before us is how to calculate the average weekly wage of a seasonal worker who is not paid a specific wage, but who works on commission. The answer to this question requires the proper interpretation of La.R.S. 23:1021(12)(d).

> The fundamental question in all cases of statutory interpretation is legislative intent. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature.
>
> The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature.
>
> Further, it is presumed that every work, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction.

*Moss v. State*, 05-1963, pp. 15-16 (La. 4/4/06), 925 So.2d 1185, 1196 (citations and footnote omitted).

5

The legislature has given us some guidance concerning how to interpret the Revised Statutes. La.R.S. 1:1, *et seq.* One of the basic rules is that "[t]he word 'shall' is mandatory and the word 'may' is permissive." La.R.S. 1:3. Additionally, "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La.R.S. 1:4. Finally, in looking at the organization of the statutes themselves, La.R.S. 1:12 provides: "The classification and organization of the sections of the Revised Statutes is made for the purpose of convenience, reference and orderly arrangement, and no implication or presumption of a legislative construction shall be drawn therefrom." Morever, "[h]eadings to sections, source notes and cross references are given for the purpose of convenient reference and do not constitute part of the law." La.R.S. 1:13.

As previously stated, "It is well established that the workers' compensation act . . . is to be liberally construed in favor of the injured worker." *Roan*, 855 So.2d at 923. Additionally, we note that the only reference to seasonal employees exists in the section establishing the average weekly wage by reference to hourly wages. Had the legislature intended for the same formula to be used for seasonal employees paid by commission, it could have easily done so. While we recognize that the WCJ's award constitutes a windfall to Mr. Lumpkin under the facts of this case, we cannot substitute what we may perceive to be the spirit of the law for the letter of the law. In light of the liberal construction afforded the injured employee in the interpretation of the Workers' Compensation Act, we find no error in the WCJ's calculation of Mr. Lumpkin's compensation rate based on him being paid by A.B.E.L. on a commission basis.

Moreover, we agree with the WCJ's finding that this issue presented a close question for which A.B.E.L. should not be penalized for contesting.

> In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. *See Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890. The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. *Authement v. Shappert Engineering*, 2002-1631, p. 12 (La.2/25/03), 840 So.2d 1181, 1188-89."

*Guillory v. Bofinger's Tree Serv.*, 06-86, p. 14 (La.App. 1 Cir. 11/3/06), 950 So.2d 682, 692.

Accordingly, the WCJ's denial of Mr. Lumpkin's request for penalties and attorney fees is affirmed. Considering the affirmation of this issue, Mr. Lumpkin's request for additional attorney fees for work performed on appeal is denied.

## CONCLUSION

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed in all respects. The costs of this appeal are assessed to A.B.E.L. Trucking of Louisiana LLC.

**AFFIRMED.**