## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1107

LAURYN RUEBUSH

VERSUS

OFFICE OF RISK MANAGEMENT
& THE CARE CENTER OF DEQUINCY

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 3
PARISH OF CALCASIEU, NO. 11-05528
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**

**Conery, J., concurs in part, dissents in part, and assigns reasons.**
**Savoie, J., concurs in part and dissents in part for the reasons assigned by Conery, J.**

H. Douglas Hunter
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.
Post Office Drawer 1329
Opelousas, LA 70571-1329
(337) 948-8201
COUNSEL FOR DEFENDANT/APPELLANT:
    The Care Center of DeQuincy

**Marcus Zimmerman**
**4216 Lake Street**
**Lake Charles,   LA 70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Lauryn Ruebush**

**AMY, Judge.**

The claimant alleged that she sustained injury to her hand while working as a nurse at the defendant nursing home. She resigned from her position following the accident and alleged that the condition of her hand deteriorated, eventually resulting in a diagnosis of complex regional pain syndrome. Although the employer provided certain medical treatment, the claimant filed this matter seeking medical care that had been denied, indemnity benefits, and penalties and attorney fees. The workers' compensation judge ruled in favor of the claimant. The employer appeals. For the following reasons we affirm, and award additional attorney fees to the claimant for work performed on appeal.

### Factual and Procedural Background

At the time of the December 4, 2010 work-related accident now at issue, the claimant, Lauryn Ruebush, was employed as a nurse at The Care Center of Dequincy, a nursing home. The claimant explained that, on that date, she approached an altercation between two patients and that an aluminum walker used by one of the patients struck her left hand/wrist. The claimant testified that she continued with her shift, but that she indicated to her supervisor that she was resigning due to the stressful nature of the position.

Although the claimant explained that her condition initially improved and she began working as a nurse at Deer Creek Hospital, she testified that her condition began to worsen. Specifically, she began having trouble with swelling and discoloration in her hand. The claimant explained that a physician at the facility suggested that she could have developed reflex sympathetic dystrophy.

Ms. Ruebush explained that her family physician referred her to Dr. Steven Hale, an orthopedic surgeon.

Dr. Hale testified in his deposition that, although he found bruising, "swelling . . . and tenderness near her fifth metacarpal head and decreased sensation in the ulnar distribution of her hand[,]" x-rays were negative for obvious fracture or dislocation. He explained that, following an EMG, he diagnosed Ms. Ruebush as having an ulnar nerve injury and that she was beginning to have early complex regional pain syndrome. Dr. Hale stated that a bone scan and MRI, conducted in March 2011, were consistent with the complex regional pain syndrome diagnosis.

On Dr. Hale's order, Ms. Ruebush underwent a nerve block in June 2011 and also began seeing Dr. Robert LeBlanc, an orthopedic surgeon, for further investigation of the condition. Ms. Ruebush ultimately reported that her pain did not decrease following the nerve block. Dr. LeBlanc testified that the failure of the block to improve the condition could have meant either that she did not have complex regional pain syndrome or that she was outside of the time frame where it would be effective. Similarly, as with the nerve block, an injection performed by Dr. LeBlanc afforded no relief. Dr. LeBlanc offered the claimant an exploratory arthroscopic surgery for diagnostic purposes. However, that surgery was not performed.

During this time frame, the claimant's family physician referred her to Dr. Tarun Jolly, an anesthesiologist and pain management physician. Although the employer denied her request to see Dr. Jolly, she began treating with him in January 2012. He reported that, on this first visit, his diagnosis "was qualified as complex regional pain syndrome of Type 1 of the upper [left] limb, as well as

chronic pain due to trauma." He explained in his deposition that objective findings supported the diagnosis. By June 2012, and while under Dr. Jolly's care, the claimant had a spinal cord stimulator inserted. At the hearing, she responded "[a]bsolutely" when asked whether she was "capable of doing some sort of light duty work" due to the success of that procedure. She explained that a revision surgery to that implantation was required after her symptoms returned. The claimant denied, however, that she could return to the physical demands of her prior work as a charge nurse. A November 2013 Functional Capacity Evalution also indicated that a return to light duty would be possible.

The disputed claim form instituting this matter was filed in July 2011 against both the employer and Risk Management Services,[1] by which the claimant sought indemnity benefits, medical benefits, and penalties and attorney fees for the failure to provide services. At the workers' compensation hearing, the parties entered into several stipulations, including: the occurrence of the work-related accident; the fact that the employer had not paid indemnity benefits (but that some medical expenses were paid); and the fact that the employer denied Dr. Jolly's involvement and any treatment emanating from him.

Following a hearing, the workers' compensation judge ruled in favor of the claimant. The ruling, and an amended ruling, awarded: temporary total disability benefits for the period between January 24, 2012 through September 9, 2012 and supplemental earnings benefits after September 10, 2012. The workers' compensation judge also ordered the reimbursement of the claimant's out-of-pocket medical expenses, as well as a penalty of $2,000 for the failure to reimburse

---

[1] The record indicates that the employer was self-insured and that this claim was administered by Risk Management Services.

sums expended in co-payments and $2,000 for failure to provide indemnity benefits. The workers' compensation judge awarded attorney fees in the amount of $18,000 as well as litigation expenses and court costs.

The employer appeals, arguing that the workers' compensation judge erred in: 1) finding that the claimant proved that her condition arose as a result of a workplace accident; 2) finding that the claimant is entitled to reimbursement of out-of-pocket medical expenses; 3) finding that the claimant is entitled to indemnity benefits; and 4) awarding penalties and attorney fees.

The claimant answers the appeal, seeking an increase in attorney fees and asserting that the workers' compensation judge erred in limiting reimbursement.

## Discussion

*Work-Related Injury*

In its first assignment of error, the employer suggests that the workers' compensation judge erred in the finding that the claimant suffers from complex regional pain syndrome in her upper left extremity as a result of the work-related accident. Chiefly, the employer suggests that the workers' compensation judge erred in relying upon the testimony of Dr. Jolly since he was not the claimant's initial choice of physician and it did not approve of a change of physician pursuant to La.R.S. 23:1121(B).[2] In particular, the employer asserts that Dr. LeBlanc, whose testing led him away from a complex regional pain syndrome diagnosis, was claimant's choice of physician for her hand injury. Had the workers'

_____

[2] Louisiana Revised Statutes 23:1121(B)(1) provides, in part:

> The employee shall have the right to select one treating physician in any field or specialty. . . . After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

4

compensation judge disregarded Dr. Jolly's opinion, the employer argues, the claimant would not have met her burden of proof.

Louisiana Revised Statutes 23:1031(A) provides: "If an employee not otherwise eliminated from the benefits of [Chapter 23] receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the condition, and to the person or persons hereinafter designated." Thus, the statute requires that, in order to receive workers' compensation benefits, the employment must cause the accident, the accident must cause the alleged injury, and the injury must cause the claimed disability. *Buxton v. Iowa Police Dep't*, 09-0520 (La. 10/20/09), 23 So.3d 275. A claimant bears the burden of proving, by a preponderance of the evidence, that the claimed disability is related to the alleged on-the-job injury. *Id.*

In this case, the occurrence of the work-related accident was established by stipulation and is not now at issue. Rather, the employer questions the workers' compensation judge's reliance on Dr. Jolly's opinion that the claimant suffers from complex regional pain syndrome, the purportedly disabling condition. Challenging that diagnosis, the employer noted at the hearing that Dr. LeBlanc ultimately rejected the complex regional pain syndrome diagnosis. The employer also referenced its choice of orthopedist, Dr. Joe Morgan, who examined the claimant in December 2011 and who stated in his report that he "did not identify any orthopedic or neurologic abnormality in the left upper extremity[.]" Instead, Dr. Morgan found the most appropriate diagnosis to be "somatization disorder" and concluded that the claimant could return to work without restriction.

On review, we find no manifest error in the workers' compensation judge's conclusion that the claimant sustained her burden of proof. Consistent with the

5

workers' compensation judge's ruling, Dr. Jolly testified that, upon his initial treatment of the claimant, he arrived at a complex regional pain syndrome diagnosis and that this diagnosis continued throughout his treatment. He explained that, through March 2012, the claimant's pain continued and that she demonstrated "very objective weakness in extension, flexion, pronation of that left upper extremity[.]" He also noted a "change in color" and that the hand "was more dusky" than the other. He identified these indications as consistent with his diagnosis. Ultimately, the spinal cord stimulator was implanted which improved the claimant's condition. This success, Dr. Jolly opined, undercut the somatization disorder diagnosis relied upon by the employer.

Neither do we find merit in the employer's contention that the workers' compensation judge erred in relying upon Dr. Jolly's opinion as an unapproved second choice of physician. The employer offers Dr. LeBlanc, an orthopedic surgeon, as the claimant's choice of hand specialist. Although the claimant treated with Dr. LeBlanc, we do not find error in the workers' compensation judge's consideration of Dr. Jolly's treatment of the claimant.[3] The claimant treated with Dr. Jolly upon referral by her family physician after her condition did not improve. Additionally, Dr. Jolly, who testified that he considers himself an expert in complex regional pain syndrome, offered treatment from the perspective of a an anesthesiologist and pain management physician. Noting that Dr. Jolly found the claimant's accident was the cause of her injuries, the workers' compensation judge found his treatment both "reasonable and necessary[.]" We find no manifest error in that determination.

---

[3] We note here too that Dr. LeBlanc did not opine that the claimant suffered no injury. Instead, Dr. LeBlanc continued searching for nature of the claimant's injury and, in fact, offered an arthroscopic surgery to investigate the nature of the complaint.

*Medical Expenses*

The workers' compensation judge's ruling in this case included an award of out-of-pocket medical expenses. In a cursory assignment of error, the employer questions that award to the extent it included reimbursement of five, $25 co-pays that the claimant made to Dr. Hale before the employer assumed payment for the treatment. The employer asserts that, after becoming aware of the incident, it reimbursed Dr. Hale for all charges. The employer suggests that the claimant must now "seek reimbursement from Dr. Hale, as he was paid in full for the treatment." We do not disturb the reimbursement award. Notwithstanding any evidence that Dr. Hale was reimbursed for his charges, there is no evidence indicating that the claimant was otherwise compensated for fees paid by her.

This assignment lacks merit.

*Indemnity Benefits*

As noted above, the workers' compensation judge found the claimant entitled to TTD benefits from January 24, 2012 through September 9, 2012 and entitled to SEB benefits thereafter. The employer challenges those awards and points out that the claimant was able to continue employment with Deer Creek Hospital, was able to pursue further schooling in pursuit of a nursing degree in 2011, and that she then moved out of state.

Louisiana Revised Statutes 23:1221(1)(c) provides that TTD benefits "shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment[.]"

Otherwise relevant to this claim, and pursuant to La.R.S. 23:1221(3), a claimant is entitled to SEB benefits upon a showing, by a preponderance of the evidence, that a work-related injury resulted in his or her inability to earn ninety percent of his pre-injury wages. *Winford v. Conerly Corp.*, 04-1278 (La. 3/11/05), 897 So.2d 560. If the claimant meets this initial burden, the employer must prove, by competent evidence: 1) the existence of a suitable job within the prescribed physical capabilities and within the claimant's community/reasonable geographic region; 2) the amount of wages a similarly situated employee can be expected to earn in the job; and 3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551.

In analysis of this assignment, it is important to consider that the indemnity awards are for periods *after* the events cited by the employer. As found above, the workers' compensation judge was not manifestly erroneous in relying upon the opinion of Dr. Jolly in preference to those favored by the employer. The period of TTD benefits awarded reflects the first date on which Dr. Jolly treated the claimant, January 24, 2012. In his deposition, Dr. Jolly explained that he diagnosed the claimant with complex regional pain syndrome on that date and that his opinion that she was totally disabled due to her condition. That opinion continued until he felt that she was able to return to work in October 2012, due to the success of an implanted spinal stimulator. Throughout his testimony, Dr. Jolly confirmed that his diagnosis was supported by various objective findings of the condition during exams. Given Dr. Jolly's opinion regarding the claimant's total disability, we find no manifest error in the award of TTD benefits during the eight-month period of 2012.

With regard to SEB benefits, the claimant testified at the January 2014 hearing in this matter that she could, in fact, return to work. She denied, however, that she could perform at the level required of her previously as a charge nurse due to weight and strength limitations associated with her condition. Indeed, Dr. Jolly confirmed in his deposition that he would return the claimant to work, but would do so at light duty. Dr. Jolly subsequently referred the claimant for a November 2013 FCE which indicated that the claimant's "present strength and functional capacities meet guidelines for the SEDENTARY-LIGHT physical demand level based on various ranges tested as evidenced by lifting and carrying between 10-20 lbs." However, the claimant's job description with the employer required that the charge nurse "[m]ust be able to push, pull, move, and/or lift a minimum of 50 pounds to a minimum height of 3 feet and be able to push, pull, move and/or carry such weight a minimum distance of 4 feet." No evidence was introduced regarding the availability of a position that would fit within the specified light duty parameters. While the Nurse Facility Administrator testified regarding the possibility of modifying the charge nurse's job description and suggested that some responsibilities could be delegated, the workers' compensation judge was not manifestly erroneous in determining that this evidence did not satisfy the employer's burden of proof enunciated above. *See Banks*, 696 So.2d 551.

This assignment lacks merit.

*La.R.S. 23:1201(F)*

The ruling in this case included penalties ($2,000 for failure to reimburse out-of-pocket expenses to the claimant and $2,000 for failure to provide indemnity benefits), attorney fees ($18,000), and litigation expenses ($2,716.00). The employer, however, argues that the award was inappropriate under La.R.S.

9

23:1201(F). This provision provides for the payment of penalties and attorney fees for failure to provide payment for compensation benefits unless the claim is reasonably controverted or the failure to provide such benefits results from conditions over which the employer had no control. On review, we note that a workers' compensation judge's decision as to whether the employer is to be cast with penalties and attorney fees is subject to the manifest error/clearly wrong standard of review. *See Sinegal v. Lafayette Par. Sheriff's Office*, 13-1437 (La.App. 3 Cir. 5/7/14), 139 So.3d 630.

After review, we maintain the workers' compensation judge's award under La.R.S. 23:1201(F). In ruling, the workers' compensation judge determined that:

> In the case at hand, the subsequent evidence of Dr. Jolly, a physician who has been treating the claimant for some time, overwhelmingly supports the claimant's position. This medical evidence was ignored by the defendants. The defendant had an option to send the claimant back to their doctors and did not.

This finding of failure to further investigate is supported by the record. In addition to Dr. Jolly's opinion, various physicians also considered and/or investigated the possibility of complex regional pain syndrome, including Dr. LeBlanc. While Dr. Morgan dismissed that claim, other physicians pursued that diagnosis in response to the claimant's ongoing complaints, including those identified as objective by Dr. Jolly. We do not conclude that the workers' compensation judge was manifestly erroneous in finding that the employer was unreasonable in its failure to further consider and investigate the ongoing complaints.

Neither do we find manifest error in the award of penalties associated with the failure to reimburse out-of-pocket expenses paid by the claimant to Dr. Hale. Above, we found no merit in the claimant's contention that its payment for Dr.

10

Hale's treatment indicated that it had reimbursed her own expenses. That reasoning extends to the instant penalty claim as well.

This assignment lacks merit.

*Answer*

In answer to the appeal, the claimant initially sought a determination that the workers' compensation judge erred in limiting her reimbursement for out-of-pocket expenses. As the claimant did not pursue that aspect of her answer in her brief to this court, we do not address the assertion here. *See* Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4). However, the claimant does maintain her plea for additional attorney fees incurred for work performed on appeal. Finding such an award appropriate in light of the award of attorney fees affirmed above, we award $2,000 in that regard.

### DECREE

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. An additional $2,000 in attorney fees is awarded for work performed on appeal. Costs of this proceeding are assessed to the appellant, The Care Center of DeQuincy.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**

11

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


**LAURYN RUEBUSH**

**V.**

**OFFICE OF RISK MANAGEMENT &**
**THE CARE CENTER OF DEQUINCY**


**CONERY, J., concurs in part, dissents in part, and assigns reasons.**

I concur with the majority's decision to affirm the WCJ's award of TTD and SEB benefits, plus court costs in the trial court and on appeal. I respectfully dissent from the majority's decision to affirm the WCJ's award of penalties and attorney fees and its award of additional attorney's fees on appeal.

First, the analysis for consideration of the merits of the WCJ's decision to award TTD and SEB benefits is different from that of the analysis of the WCJ's decision to award penalties and attorney fees. The decision to award disability benefits is guided by the overriding principle that workers' compensation legislation is remedial in nature and should be liberally construed to benefit the injured employee. *See Lumpkin v. A.B.E.L. Trucking of La. LLC*, 10-54 (La.App. 3 Cir. 6/2/10), 40 So.3d 422, *writ denied*, 10-1543 (La. 10/1/10), 45 So.3d 1104.

The award of penalties and attorney fees, on the other hand, is punitive in nature and must be strictly construed. *See Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La. 12/1/98), 721 So.2d 885. It may well be then, that in a given case, the same evidence used to justify an award of benefits may not be sufficient to justify an award of penalties and attorney fees.

Under La.R.S. 23:1201(F), the employer, in my view, put forth sufficient evidence in this case to "reasonably controvert" the claim for penalties and attorney fees. *See Brown*, 721 So.2d 885; *Williams v. Pilgrim's Pride Corp.*, 11-59 (La.App. 3 Cir. 6/1/11), 68 So.3d 616, *writs denied*, 11-1793 and 11-1794 (La. 10/21/11), 73 So.3d 384; *Dietz v. Lowe's Home Centers, Inc.*, 14-401 (La.App. 3 Cir. 11/5/14), 151 So.3d 990*; Sinegal v. Lafayette Parish Sherriff's Office*, 13-1437 (La.App. 3 Cir. 5/7/14), 139 So.3d 630. The WCJ failed to make specific factual findings or cite legal authority to support such an award. Indeed, the only portion of the opinion discussing penalties and attorney fees was completely conclusory in nature and stated:

> The claimant is classified as a part-time employee. She is entitled to reimbursement of out-of-pocket medical expenses. Based on the evidence presented, the defendants failed to reasonably controvert this claim; therefore, penalties are owed in the amount of $2,000 for their failure to reimburse the claimant $125, that would include five co-pays of $25 each for her visits to Dr. Steven Hale, and the defendant is responsible for $2,000 for their failure to initiate indemnity benefits. Further more, the claimant is entitled to attorney's fees in the amount of $18,000 for prosecution of the claim. She is further entitled to reimbursement of litigation expenses in the amount of $2,716. The defendant shall pay costs with interest. Thus done this 6th day of June 2014.

The analysis for the decision to award benefits is equally deficient, and contains few specific factual findings or credibility determinations:

> In the case at hand, the subsequent evidence of Dr. Jolly, a physician who has been treating the claimant for some time, overwhelmingly supports the claimant's position. This medical evidence was ignored by the defendants. The defendant had an option to send the claimant back to their doctors and did not. Based on the evidence, the Court finds for the claimant. Thus, after reviewing the medical evidence, the Court finds that based on the medical evidence the claimant has carried her burden of proof; therefore, she is entitled to temporary total disability benefits from June 24, 2011, to September 8, 2013. She is further entitled to supplemental earnings benefits from September 8, 2012.

However, because of the liberal interpretation required as to the issue of the right to receive benefits and the application of the manifest error rule, I am constrained to agree that the decision to award TTD and SEB benefits must be affirmed.

Obviously, the WCJ was impressed with Dr. Jolly's opinion and concluded, without commenting upon the vast amount of medical and lay testimony to the contrary, that Dr. Jolly's opinion "overwhelming supports the claimant's position." Further, that, "This medical evidence was ignored by the defendants."

In my view, the defendant sufficiently explained, based on the facts of the case and the many medical opinions of plaintiff's original treating physicians, that it had ample evidence upon which to base its decision to deny benefits. Dr. Jolly's opinion was not ignored.

The WCJ awarded an additional $2,000.00 penalty against defendants "for their failure to initiate indemnity benefits" and a $2,000.00 penalty for failure to timely reimburse plaintiff for medical expenses. Again, while the evidence based on plaintiff's and Dr. Jolly's testimony and records may have been sufficient under the manifest error rule to support the award of TTD and SEB benefits, there are no factual findings, nor is there analysis of the evidence, to support the WCJ's award of penalties, $18,000.00 in attorney fees and $2,716.00 in litigation expenses for failure to initiate benefits and reimburse medical bills.

As to the penalty claim for failure to pay medical expenses, likewise, under the strict interpretation required of a penal statute, should the defendant be penalized $2,000.00 plus attorney fees for a bill which it allegedly proved had already been paid directly to Dr. Hale as required by law? The WCJ's conclusory statement that, "Based on the evidence presented, the defendants failed to reasonably controvert this claim," is belied by the evidence that Dr. Hale's bill was

paid directly to him and not the claimant, as required by statute.

A review of the WCJ's opinion on the issue of penalties and attorney fees clearly shows that the evidence and analysis put forth by the employer/defendant/appellant as to whether the claim was "reasonably controverted" was given short shrift by the WCJ. That evidence showed that Ms. Ruebush, working as an LPN, timely reported an injury to her left hand that occurred on December 4, 2010, while in defendant's employ when she was struck with an aluminum walker by one of the patients. She resigned the same day and did not make a claim for workers' compensation benefits until July 2011. In the meantime, she worked for another company as a nurse, failed to note an injury on her employment application for that job, completed almost all of her course requirements to be a registered nurse, including extensive typing, reconciled with her husband and moved out of state, all the while making no complaint for disability benefits to defendant. The underlying facts and summary of her medical treatment were thoroughly reviewed in defendant/appellant's brief and support the conclusion that the defendant reasonably controverted the claim and should not be assessed with penalties and attorney's fees.

In my view, defendant presented considerable evidence upon which to base an opinion that this claim was reasonably controverted. Recognizing that the manifest error rule applies to this issue, I would nevertheless find that because the WCJ made no factual or credibility findings on the issue of penalties and attorney fees, the defendant/appellant's evidence supports the position that the claim was reasonably controverted within the meaning of the La.R.S. 23:1201(F). The WCJ was manifestly erroneous in concluding otherwise. An employer should not be penalized for bringing a bona fide dispute on a close factual or legal issue to the

court for resolution. Louisiana Constitution Article 1, § 22 states, "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." *See also Williams*, 68 So.3d 616; *Dietz*, 151 So.3d 990*; Sinegal*, 139 So.3d 630.

I would reverse the WCJ's decision to award penalties and attorney fees and dissent from the majority's decision on that issue. I likewise dissent from the majority's decision to award attorney fees on appeal, but agree that defendant should be cast with all court costs in the trial court and on appeal. I concur with the majority's decision in all other respects.